Judith Kay **GRABER**, Appellant,

v.

**CITY OF ANKENY, Iowa, Appellee.**

No. 98–1176.

Supreme Court of Iowa.

Sept. 7, 2000.

Mary S. Bernabe, Des Moines, for appellant.

Chester C. Woodburn, III, of Hansen, McClintock & Riley, Des Moines, appellee.

TERNUS, Justice.

The appellant, Judith Graber, was injured in an automobile accident that occurred at an intersection located within the city limits of the appellee, City of Ankeny. She brought an action against the City, which resulted in an adverse jury verdict. In her appeal, she makes several claims: (1) the court abused its discretion in admitting evidence of her settlement with the other party involved in the accident; (2) the court erroneously instructed the jury on several issues; (3) Iowa Code chapter 668 (1997) violates her rights to due process and equal protection; (4) the court erred in failing to grant the plaintiff's motion for new trial; (5) the court erred in failing to sustain her objections to the defendant's questioning of her expert witness; and (6) the court erred in allowing the defendant's witness to give expert testimony when he had not been designated as an expert witness. We conclude that the court's admission of evidence of the plaintiff's settlement with a released party constitutes reversible error. Accordingly, we reverse and remand for a new trial.

## I. Background Facts and Proceedings.

On the morning of July 13, 1996, the plaintiff was traveling north on State Street, south of Ankeny, Iowa, approaching the intersection of State Street and Oralabor Road, another main thoroughfare bordering the City to the south and running east and west. The speed limit on this section of Oralabor was 55 miles per hour.

The plaintiff entered the intersection of State Street and Oralabor on the green light, intending to turn left. As she did so, she was struck broadside by Kristie Allen. Allen was traveling east on Oralabor and admitted she entered the intersection on a red light. The plaintiff sustained extensive and serious injuries.

Initially, the plaintiff brought suit against Allen and against Allen's boyfriend, Brook Hansen, who owned the car Allen was driving at the time of the accident. Allen and Hansen sought leave to file a cross-petition against the City, who, they asserted, was negligent in its operation of the traffic control signals at the intersection. Subsequently, the plaintiff amended her petition to add the City as a defendant. She alleged the City was negligent in failing to properly maintain and properly set the timing of the traffic lights at the intersection. The plaintiff asserted that the City's improper timing of the traffic signals confused drivers because they were not allowed sufficient time to clear the intersection before cross-traffic received a green light.

Sometime after the City was joined as a defendant, the plaintiff settled with Allen and Hansen. In a pre-trial ruling, the court held that the City could introduce evidence of the settlement, but not the amount paid by Allen and Hansen. The case proceeded to trial, and the jury returned a verdict in favor of the City, finding it was not at fault. The plaintiff's post-trial motions were overruled and she filed this appeal.

## II. Did the Trial Court Err in Admitting Evidence of the Settlement Between the Plaintiff and the Released Parties?

During cross-examination of Allen, the defendant elicited testimony that Allen and Hansen had been dismissed from the lawsuit "because some deal had been cut and money paid on [their] behalf." The plaintiff's objection on the basis of lack of relevancy was overruled.

■ A. General principles and scope of review. Irrelevant evidence is not admissible. See Iowa R. Evid. 402. The converse proposition—that relevant evidence is admissible—is not automatically true. See id. committee comment—1983 ("Statutes, rules of procedure, constitutional and policy considerations may require the exclusion of otherwise relevant evidence."). Even relevant evidence should not be admitted when "its probative value

is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury...." Iowa R. Evid. 403. Therefore, the decision to admit evidence requires a two-step inquiry: (1) is the evidence relevant? and (2) if so, is its probative value substantially outweighed by the danger of prejudice or confusion?

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Iowa R. Evid. 401. A determination of the probative value of relevant evidence focuses on the strength and force of the tendency of the evidence "to make a consequential fact more or less probable." *McClure v. Walgreen Co.*, 613 N.W.2d 225, 235 (Iowa 2000). "Unfair prejudice arises when the evidence prompts the jury to make a decision on an improper basis...." *Waits v. United Fire & Cas. Co.*, 572 N.W.2d 565, 569 (Iowa 1997).

We review the court's decision to admit relevant evidence for an abuse of discretion. *See McClure*, 613 N.W.2d at 235; *see also State v. Brewer*, 247 N.W.2d 205, 214 (Iowa 1976) (holding that once evidence was determined to be relevant, "trial court was obliged to exercise its discretion and determine whether its probative value was outweighed by its prejudicial effect"). An abuse of discretion occurs when "the court exercise[s] [its] discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Waits*, 572 N.W.2d at 569 (quoting *State v. Maghee*, 573 N.W.2d 1, 5 (Iowa 1997)). A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law. *See id.*

Not every erroneous admission of evidence requires reversal. *See McClure*, 613 N.W.2d at 235. Only when "a substantial right of the party is affected" is reversal warranted. *Id.* (quoting Iowa R. Evid. 103(a)). We presume prejudice from the admission of irrelevant evidence. *See Lewis v. Kennison*, 278 N.W.2d 12, 15 (Iowa 1979). Accordingly, reversal is required unless the record shows a lack of prejudice. *See McClure*, 613 N.W.2d at 235. Thus, despite the discretionary nature of the trial court's decision to admit evidence, we do not hesitate to reverse "when the jury was allowed to consider plainly irrelevant and prejudicial evidence." *State v. Oppedal*, 232 N.W.2d 517, 520 (Iowa 1975).

B. *Legal principles governing the admission of evidence of settlement.* Iowa Rule of Evidence 408 deals specifically with the relevancy of settlement evidence:

[E]vidence of ... accepting ... a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.... This rule does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness....

Iowa R. Evid. 408. This language is taken verbatim from Federal Rule of Evidence 408. The advisory committee notes that accompanied the federal rule when it was proposed gave this explanation of the rule:

[E]xclusion may be based on two grounds[:] (1)[t]he evidence is irrelevant, since the offer may be motivated by a desire for peace rather than from any concession of weakness of position ... [and] (2) ... [the] promotion of the public policy favoring the compromise and settlement of disputes.... While the rule is ordinarily phrased in terms of offers of compromise, it is apparent that a similar attitude must be taken with respect to completed compromises when offered against a party thereto. This latter situation will not, of course, ordinarily occur except when a party to the present litigation has compromised with a third person.

Fed.R.Evid. 408 advisory committee's note; *accord Miller v. Component Homes, Inc.*, 356 N.W.2d 213, 216 (Iowa 1984) (noting, as reasons for excluding evidence of compromise, that offer of compromise implies merely a desire for peace, not a concession of wrong doing, and public policy favoring settlement of disputes). The committee comments to the Iowa rule state that the Iowa rule is in accord with the federal rule. *See* Iowa R. Evid. 408 committee comment—1983.

In *McHann v. Firestone Tire & Rubber Co.*, the Fifth Circuit Court of Appeals reversed a trial court ruling allowing into evidence the fact that the plaintiff had settled with a third party. 713 F.2d 161, 165–66 (5th Cir.1983). The court gave the following explanation of the reasons underlying the rule:

> Our concern is that the Covenant Not to Sue would have led the jury to deny [the plaintiff's] claim against Firestone based on the perception that [the third party] would not have paid the substantial sum of $27,500 if it ... were not the party at fault. Excluding evidence of the Covenant will eliminate this possible source of prejudice to [the plaintiff], and will carry out the policy of Rule 408 to encourage out-of-court settlements.... [T]he incentive for parties to settle cases involving many [parties] would be undermined if their settlement with one ... could come back to haunt them in later suits.

*Id.* at 166–67 (citations omitted). These reasons are equally valid under Iowa Rule of Evidence 408. *See Lewis*, 278 N.W.2d at 14 ("It is generally held that offers to compromise disputed claims are inadmissible because they are irrelevant and because policy considerations require their exclusion.").

C. *Application of law to present case.* In the case before us, the City asserts that the evidence of settlement was relevant to Allen's credibility. Allen testified at trial that the light turned red too fast given the speed of the cars on Oralabor. This testimony supported the plaintiff's claim that the City was negligent, as well as the plaintiff's claim that Allen had a legal excuse for being in the intersection on a red light. Thus, claims the City, evidence that Allen had settled with the plaintiff was relevant to Allen's bias or prejudice. In addition, the City contends the evidence was necessary to prove Allen's identity as a released party for purposes of receiving a comparative fault instruction under Iowa Code chapter 668.

1. *Relevancy to bias or prejudice of Allen.* In reviewing our cases dealing with the admission of evidence of settlement, it is apparent that we have strictly adhered to the principle that it is erroneous and highly prejudicial to allow such evidence into the record solely for the purpose of establishing liability, and we have been reluctant to make an exception for impeachment purposes. In *Stewart v. Madison*, 278 N.W.2d 284 (Iowa 1979), the plaintiff was a passenger in a car driven by Madison and was injured in a collision between Madison's car and a train. 278 N.W.2d at 285. The plaintiff sued Madison and the railroad, but settled with Madison before trial. *Id.* at 293. At trial, the railroad sought to impeach the plaintiff with evidence of his settlement with Madison, asserting such evidence was relevant because the plaintiff had changed his testimony with respect to the amount of Madison's pre-accident drinking. *Id.* In upholding the district court's refusal to admit the evidence, this court stated:

> The court did not limit defendant's right to impeach [the plaintiff] on the basis of prior inconsistent statements; in fact it specifically ruled that this could be done. Inquiry as to prior inconsistent statements, if any, was permitted by the trial court; it just did not permit evidence as to the *reasons* for such inconsistencies. Although this latitude might be proper as to other areas of impeachment, it runs head-on in this case with the strong policy considerations favoring settlements and discouraging their use in a

manner which might place a chill on settlements or settlement attempts. Under these circumstances it was not error to restrict evidence of the settlement in the manner of the trial court.

*Id.* (citation omitted).

A similar result was reached in *Gail v. Clark,* 410 N.W.2d 662 (Iowa 1987), a case, like the present one, where the evidence was alleged to be relevant to the settling tortfeasor's bias. In this dramshop action, the convenience store defendant sought to introduce evidence that the plaintiffs, a police officer and his wife, had settled with Clark, the drunken motorist involved in a high-speed chase resulting in the officer's injuries. *Gail,* 410 N.W.2d at 671. Arguing that the settlement occurred approximately two months after Clark had given his deposition testimony, and that subsequently, at trial, Clark had retracted much of this testimony, the defendant asserted that evidence of the settlement was admissible to show bias or prejudice on Clark's part. *Id.* The defendant's "theory was that Clark's trial testimony demonstrated an effort by him to help the [plaintiffs] at a time when it would not expose him to liability." *Id.* The trial court's refusal to allow the evidence was upheld on appeal. *Id.* at 672.

An enlightening discussion of the relevancy of settlement evidence to bias or prejudice is found in the Nebraska case of *London v. Stewart,* 221 Neb. 265, 376 N.W.2d 553 (1985). In that case, the plaintiff, London, was a passenger in an automobile driven by Stewart. *London,* 376 N.W.2d at 554. Stewart's car was involved in a collision with a vehicle driven by Siecke. *Id.* At trial, the alleged negligence of both drivers was at issue; Stewart was claimed to be driving on the wrong side of the road and Siecke was alleged to be driving in the dark without his headlights on and possibly on the wrong side of the road. *Id.* at 554–55. Mrs. Siecke, who was a passenger in her husband's car at the time of the accident, was called as a witness at trial. *Id.* In contradiction to her deposition testimony, where she had stated "she did not know which side of the road they were on," Mrs. Siecke testified at trial that their car was on the right side of the road at the time of the accident. *Id.* at 556. Over the plaintiff's objection, the defendant, Stewart, was allowed to inquire whether, at the time of her deposition, her husband was a defendant in the lawsuit. *Id.* The trial court allowed the question under the theory that it was admissible to show bias. *Id.* The Supreme Court of Nebraska reversed and in doing so gave the following rationale for its decision:

Assuming that such evidence constitutes evidence of compromising a claim involving the witness, it is difficult to see that such testimony could be the result of bias arising out of such compromise. We agree with the plaintiff that the questions asked of Mrs. Siecke were clearly intended to suggest that her husband had paid [the plaintiff]; therefore, it is assumed, the jury would not want to compensate plaintiff twice. *However, there must be something about the settlement of the claim against the husband of the witness that might influence her to testify falsely.*

It is conceivable that at the time when the suit against her husband was still active, Mrs. Siecke might want to testify favorably to him, i.e., that he was on his own side of the road at all times. Contrariwise, once his liability was settled, other than the desire to tell the truth, she would have no reason to care on which side of the road he was, and an answer that she did not know would not be unexpected. In the present case the sequence was just the opposite.

We see no logical connection between the facts testified to by Mrs. Siecke and the status of her husband's lawsuit. We see no relevance to the testimony. At best, any possible relevance was outweighed by the danger of unfair prejudice, confusion, or misleading the jury.

*Id.* at 556–57 (emphasis added).

We agree with this analysis. The mere fact of settlement does not automati-

cally implicate the bias or prejudice of a party to the settlement. If this were true, rule 408 would be rendered a nullity. Rather, there must be something about the settlement that might influence the witness to testify falsely. Only under these circumstances does the evidence reflect upon the possible bias or prejudice of the witness; accordingly, only under these circumstances is the evidence relevant. We turn now to the facts of this case.

■ Preliminarily we note that there is nothing in the record to suggest that Allen testified differently before the settlement than she did after the settlement; she has always maintained that the light changed too fast. More importantly, the defendant points to nothing in the settlement that would motivate Allen to testify falsely at trial. Under this state of the record, we find no factual basis to support admitting evidence of the settlement on the issue of bias or prejudice.

■ 2. *Relevancy to identity.* The defendant argues alternatively that this evidence was relevant to show Allen's identity for purposes of assigning fault to her. *See* Iowa Code § 668.3(2)(b) (requiring the jury to indicate the percentage of fault assigned to the plaintiff, the defendant, any third-party defendant, and any released party). We fail to find any indication in the record, however, that there was ever any dispute that Allen qualified as a released party for purposes of allocating fault. In fact, the plaintiff's attorney conceded at the hearing on her motion in limine prior to trial that the jury would "be determining an allocation of fault ... to Kristie Allen." In the absence of a dispute on this issue, the evidence should not be admitted for purposes of identifying Allen as a released party. *See Brewer v. Payless Stations, Inc.,* 412 Mich. 673, 316 N.W.2d 702, 705 (1982) (holding that "[w]hen there is no genuine dispute regarding either the existence of a release or a settlement between plaintiff and a codefendant or the amount to be deducted, the jury shall not be informed of the existence of a settlement or the amount paid"). *See generally Ipsen v. Ruess,* 241 Iowa 730, 733–34, 41 N.W.2d 658, 661 (1950) (noting the general rule as to relevancy is " 'whether there is a logical or rational connection between the fact which is sought to be proved and a matter of fact *which has been made an issue in the case* '" (emphasis added)).

The defendant relies upon our decision in *Garren v. First Realty, Ltd.,* 481 N.W.2d 335 (Iowa 1992). In *Garren,* this court affirmed the admission of evidence that certain parties had been released by the plaintiff prior to trial. 481 N.W.2d at 339. This case does not provide authority for the admission of settlement evidence here, however, because in *Garren* the plaintiff objected to any instruction allowing the jury to allocate fault to the released parties. *Id.* at 337, 339. Therefore, the challenged evidence in *Garren* was relevant to a disputed issue, which is not the situation here. Therefore, *Garren* is not helpful in analyzing the issue before us in this case.

We think that to allow settlement evidence to be admitted under the circumstances present here—where the witness's status as a released party is not at issue—would result in the automatic admission of such settlements in every case where the plaintiff settles with less than all the defendants. Such a result would seriously undermine Iowa's public policy to encourage settlements. We hold, therefore, that the trial court abused its discretion in admitting the evidence in this case.

■ 3. *Prejudice.* As noted above, prejudice is presumed when evidence is erroneously admitted, "unless the contrary is affirmatively established." *Lewis,* 278 N.W.2d at 15. The record before us does not show a lack of prejudice so as to overcome this presumption. Clearly, evidence of the plaintiff's settlement with Allen would tend to imply to the jury that the plaintiff had already received a measure of compensation for her injury and

that Allen would not have paid money to settle the case if Allen did not think she was at fault. These misleading implications deprived the plaintiff of a substantial right to have the issues in the case determined on the merits of the *relevant* evidence. Therefore, we hold that the plaintiff is entitled to a new trial untainted by evidence of her settlement with Allen. Although our decision on this issue requires reversal, we will address other issues raised on appeal that will arise again upon retrial.[1]

 III. *Did the District Court Err in Instructing the Jury on the Issues of (1) Legal Excuse, (2) Res Ipsa Loquitur, (3) Plaintiff's Fault, (4) the Definition of Red Light, and (5) Speed?*

We review the trial court's instructions to the jury for correction of errors of law. *See Iowa Mut. Ins. Co. v. McCarthy,* 572 N.W.2d 537, 545 (Iowa 1997). In addition to the principle that "the theories of both parties must be submitted to the jury when supported by substantial evidence," *Lockard v. Carson,* 287 N.W.2d 871, 875 (Iowa 1980), the following principles regarding jury instructions are also well established:

A material misstatement of the law warrants reversal. It is also reversible error to submit an instruction having no support in the record. "When considering whether evidentiary support for an

instruction exists, [the court] give[s] the evidence the most favorable construction it will bear." ... [R]eversal is required when instructions are conflicting and confusing. An instruction is not confusing if, when the instructions are considered as a whole, one must conclude "that the jury could not have misapprehended the issue presented by the challenged instruction."

*Waits,* 572 N.W.2d at 575 (citations omitted). "A party is not entitled to any particular form of instruction, but merely to instructions which fairly state the law as applied to the facts." *Rumley v. City of Mason City,* 320 N.W.2d 648, 652 (Iowa App.1982).

A. *Legal excuse.* Under the legal excuse doctrine, a jury may excuse a party's failure to comply with a statute if the party was confronted with an emergency not of the party's own making. *See Weiss v. Bal,* 501 N.W.2d 478, 480 (Iowa 1993). Here, the plaintiff requested an instruction that *Allen* claimed that if the jury found that she violated the law, she had a legal excuse for doing so. The court, however, decided that the proper instruction was that the *plaintiff* claimed that if Allen violated the law, Allen had a legal excuse for doing so.[2]

We find no error in the court's instruction. "[T]he burden of proof on an issue is upon the party who would suffer loss if the issue were not established."

**1.** Our reversal and remand for a new trial on the basis of the erroneous admission of settlement evidence makes it unnecessary to decide the plaintiff's claim that she is entitled to a new trial because the verdict is against the overwhelming weight of the evidence and is without substantial support in the record. *See generally* Iowa R. Civ. P. 244 (setting forth grounds for new trial); *Johnson v. Knoxville Community Sch. Dist.,* 570 N.W.2d 633, 641 (Iowa 1997) ("If a jury verdict is not supported by sufficient evidence and the verdict fails to effectuate substantial justice, a new trial may be ordered."). To the extent that the plaintiff's motion for new trial was actually a request for a directed verdict (the record is not entirely clear on this point), we con-

clude that the evidence on the City's fault was conflicting and, therefore, the case was properly submitted to the jury.

**2.** The trial court required that the plaintiff amend her pleadings to allege legal excuse in order to obtain an instruction on this defense. The plaintiff claims it was error for the court to require that the defense be pled. We agree. The legal excuse doctrine need not be pled, so long as it is raised at some point in the trial. *See Machmer v. Fuqua,* 231 N.W.2d 606, 608 (Iowa 1975); *Dickman v. Truck Transp., Inc.,* 224 N.W.2d 459, 466 (Iowa 1974); *Townsend v. Armstrong,* 220 Iowa 396, 404, 260 N.W. 17, 21 (1935).

*Beyer v. Todd,* 601 N.W.2d 35, 41 (Iowa 1999). In this case, the plaintiff would benefit from proof of the defense, as a finding that Allen had a legal excuse for being in the intersection on a red light would reduce Allen's fault, thereby potentially resulting in an allocation of more fault to the City. It is, therefore, the plaintiff who bears the burden of proof on this issue. While Allen may have initially claimed a legal excuse for her conduct, she was no longer a party at the time of trial. By the time this case was submitted to the jury, legal excuse was the plaintiff's claim, not Allen's. Therefore, the court's instruction was proper.

■ B. *Res ipsa loquitur.* The doctrine of res ipsa loquitur is a rule of evidence that permits an inference that the defendant was negligent. *See Brewster v. United States,* 542 N.W.2d 524, 528–29 (Iowa 1996). Two elements must be present for the doctrine to apply: "(1) the injury is caused by an instrumentality under the exclusive control of the defendant, and (2) the occurrence is such as in the ordinary course of things would not happen if reasonable care had been used." *Mastland, Inc. v. Evans Furniture, Inc.,* 498 N.W.2d 682, 686 (Iowa 1993). A party must produce substantial evidence of both elements to be entitled to an instruction on general negligence under the res ipsa loquitur doctrine. *Brewster,* 542 N.W.2d at 529.

■ Here, the plaintiff claims the trial court erred in refusing to give her requested instruction allowing the jury to consider this principle. We conclude no error occurred because the plaintiff failed to produce substantial evidence of the first requirement that the injury be caused by an instrumentality under the defendant's exclusive control. To satisfy this element, "[t]he injury must either be traced to a specific instrumentality or cause for which the defendant was responsible, or it must be shown that the [defendant] was responsible for all reasonably probable causes to which the accident could be attributed."

W. Page Keeton et al., *Prosser & Keeton on Torts* § 39, at 248 (5th ed.1984).

In the present case, the immediate cause of the plaintiff's injuries was the collision of her vehicle with the car driven by Allen. Thus, the instrumentality directly causing the plaintiff's injuries—Allen's car—was not in the exclusive control of the City. The fact that an additional instrumentality—the traffic lights—were potentially a cause of the plaintiff's injuries and were exclusively in the City's control is insufficient to entitle the plaintiff to an instruction on res ipsa loquitur.

■ C. *Plaintiff's fault.* At the conclusion of the evidence and over the plaintiff's objection, the trial court allowed the City to amend its answer to allege the fault of the plaintiff for failing to maintain a proper lookout. The court then instructed the jury on the plaintiff's alleged fault and gave the following definition of "proper lookout":

"Proper lookout" is the lookout a reasonable person would keep in the same or similar situation. It means more than looking and seeing. It includes being aware of the operation of the driver's vehicle in relation to what the driver saw or should have seen.

The plaintiff does not challenge this instruction as a correct statement of the law, but does contend there was insufficient evidence to support the instruction.

The plaintiff testified that her last recollection before the accident was seeing the light turn green. Allen testified that she saw the plaintiff's car before the accident, that there was no sight obstruction between her car and the plaintiff's car, and that she saw the plaintiff's car pulling out a couple of seconds prior to impact. In addition, the plaintiff's expert testified that the plaintiff had a red light until approximately three seconds prior to the collision.

We agree with the defendant that reasonable minds could conclude from this testimony that if Allen could see the plaintiff, then the plaintiff could have seen Allen

had the plaintiff looked. In addition, reasonable minds could conclude that had the plaintiff observed Allen, she could have seen that Allen was traveling at a high rate of speed (possibly 55 to 60 miles per hour) and was not stopping at the intersection. Finally, reasonable minds could conclude based on these circumstances that, had the plaintiff observed Allen's vehicle, the plaintiff could have avoided the accident by not proceeding into the intersection when the light turned green for the plaintiff.

■ The plaintiff relies on the fact that under Iowa law she could assume that Allen would obey the law. This assumption, however, is only valid until the person "knows, or in the exercise of due care should have known, otherwise." *Matuska v. Bryant,* 260 Iowa 726, 734, 150 N.W.2d 716, 721 (1967). In the case at hand, the jury could have concluded (1) ordinary care required the plaintiff, who was approaching an intersection where a red light had just turned green, to ascertain whether intersecting traffic had slowed or stopped before she entered the intersection, and (2) had the plaintiff exercised this degree of care, she would have known that Allen was not obeying the law by stopping at the red light.

■ The plaintiff also urges that there was no direct evidence of what she did or saw immediately before the accident because the last thing she remembered was her light turning green; consequently, she argues, there is no evidence to support the instruction on her alleged improper lookout. The lack of any direct evidence from the plaintiff as to whether she looked and/or whether she saw Allen's vehicle entering the intersection does not, however, preclude the jury from considering the circumstantial evidence indicating that the plaintiff had an opportunity to look and, had she observed Allen's car, the plaintiff could have taken action to avoid the accident. *See generally Rush v. Sioux City,* 240 N.W.2d 431, 440 (Iowa 1976) (" 'the question as to its being a proper or sufficient lookout [is] deter-

mined by the particular surrounding circumstances as revealed by the evidence then under consideration' " (quoting *Jesse v. Wemer & Wemer Co.,* 248 Iowa 1002, 1011, 82 N.W.2d 82, 86 (1957))), *overruled on other grounds by Hoffert v. Luze,* 578 N.W.2d 681, 685 (Iowa 1998). We conclude, therefore, that the trial court did not err in instructing the jury on the defendant's claim that the plaintiff was negligent for failing to maintain a proper lookout.

D. *Definition of a red light.* The plaintiff claims error in the trial court's refusal to instruct the jury as follows:

[A]n all-red clearance interval may be used. If you find that an all-red clearance was used, it shall be of sufficient duration to allow those vehicles who could not stop safely prior to its display or who were in the intersection when it was displayed, to clear the intersection before conflicting traffic is released.

(An all-red clearance light means that traffic in all directions has a red signal, giving vehicles an opportunity to clear the intersection before cross-traffic is released with a green light.) Instead of the requested instruction, the trial court gave instruction 26, which informed the jury as follows with respect to a red clearance interval:

The yellow vehicle change interval may be followed by a red clearance interval of sufficient duration to permit traffic to clear the intersection before conflicting traffic movements are released.

This language is taken from the *Manual on Uniform Traffic Control Devices,* which the City is required to follow. *See* Iowa Code §§ 321.252, .255; Iowa Admin. Code r. 761—130.1 (1996).

Clearly, the instruction given by the court is an accurate statement of Iowa law. Moreover, instruction 26 duplicates that portion of the plaintiff's requested instruction that the red clearance interval should be "of sufficient duration to allow those vehicles . . . who were in the intersection when it was displayed to clear the intersection." The court was not required to use the plaintiff's preferred language so

long as the instruction embodied the same legal principle.

■ That brings us to the portion of the plaintiff's requested instruction not contained in instruction 26: that the red clearance light be of sufficient duration to allow the clearance of "vehicles who could not stop safely prior to its display." This additional qualification with respect to the duration of a red clearance light is not contained in the Manual, nor has the plaintiff cited any other statute or case that imposes this requirement. Therefore, the trial court did not err in refusing to instruct on this concept.

■ E. *Speed.* The plaintiff objected to the court's instruction, "At the time and place and with the motor vehicle involved in this case, any speed over 55 miles per hour was unlawful." The plaintiff complains that there was no testimony that anyone involved in this collision was traveling in excess of 55 miles per hour. We think there was testimony in the record, however, from which the jury could conclude that Allen was traveling over 55 miles per hour. When asked "how may seconds was the red light on before you hit Mrs. Graber's car?" Allen responded, "I don't know how many seconds. Seconds go real fast when you're going 60, 55, 60. It's kind of a high speed." As noted earlier, in considering whether there is substantial evidence in support of an instruction, we must construe the evidence most favorably to uphold the court's decision. In doing so here, we think the quoted testimony supported the court's instruction and, therefore, the court did not err in submitting this instruction to the jury.

IV. *Whether the Application of Iowa Code Section 668.14(1) to This Case Violates the Plaintiff's Right to Due Process and Equal Protection of the Laws Under the United States and Iowa Constitutions?*

■ Iowa Code section 668.14(1) provides:

In an action brought pursuant to this chapter seeking damages for personal injury, the court shall permit evidence and argument as to the previous payment or future right of payment of actual economic losses incurred or to be incurred as a result of the personal injury for necessary medical care, rehabilitation services, and custodial care except to the extent that the previous payment or future right of payment is pursuant to a state or federal program or from assets of the claimant or the members of the claimant's immediate family.

This statute, where applicable, modifies the common-law collateral source rule by allowing the introduction of evidence of payment by a third party or collateral source of expenses for medical care, rehabilitation services, and custodial care. *See Schonberger v. Roberts,* 456 N.W.2d 201, 202 (Iowa 1990) (noting that section 668.14 limits the collateral source rule under which "a tortfeasor's obligation to make restitution for an injury he or she caused is undiminished by any compensation received by the injured party from a collateral source").

The plaintiff's constitutional challenge to this statute begins with the premise that because it applies only "in an action brought pursuant to this chapter," *see* Iowa Code § 668.14(1), it is triggered only by a "claim involving the fault of more than one party to the claim," *see id.* § 668.3(2). Her argument continues that "blameless plaintiffs" are treated differently depending upon whether they have a claim against one party or more than one party.[3] A blameless plaintiff who sues only one defendant is not subject to chapter 668 and the modified collateral source rule, she asserts, whereas a blameless plaintiff who sues more than one defendant is subject to the collateral source rule of section 668.14(1). The plaintiff argues that

---

**3.** A "blameless plaintiff" is one who is not alleged to be at fault. We assume for purposes of this issue that the plaintiff in the case before us is blameless.

this different treatment violates her due process and equal protection rights.

We must reject the plaintiff's argument because it is based upon a faulty premise. This court held in *Waterloo Savings Bank v. Austin*, 494 N.W.2d 715, 717 (Iowa 1993), that the legislature did not intend by the language used in section 668.3(2) to restrict the application of chapter 668 to claims involving the fault of more than one party. We concluded that chapter 668 applied to any suit in which "fault," as defined by section 668.1, was at issue, regardless of the number of parties allegedly at fault. *Waterloo Sav. Bank*, 494 N.W.2d at 717 (holding that chapter 668 applies to all actions alleging a non-intentional tort resulting in injury or death to persons or damage to property). Therefore, the plaintiff's underlying assumption—that section 668.14(1) does not apply in suits where a blameless plaintiff sues only one defendant—is not true. Accordingly, her constitutional claims fail.

V. *Whether the Trial Court Erred in Failing to Sustain the Plaintiff's Objections to the Questioning of her Expert Witness by the Defendant?*

 The plaintiff objected to the defendant's cross-examination of her expert witness concerning a one-second perception/reaction time. She objected on the ground that there was no factual basis in the record for the assumption that a one-second perception/reaction time was appropriate. The trial court overruled the plaintiff's objection.

Our review of the record reveals that on direct examination the plaintiff's expert testified that it was possible for Allen to have stopped prior to reaching the intersection under certain assumptions he had made, including a one-second perception/reaction time. On cross-examination,

the defendant merely sought to elaborate on this testimony. The plaintiff contends, however, that the evidence showed Allen's perception and reaction were delayed and, therefore, a one-second perception/reaction time was not applicable.

Because the expert gave an opinion on direct that was premised on a one-second perception/reaction time, the trial court did not err in allowing questions on cross-examination that were also premised on a one-second perception/reaction time. Whether this typical perception/reaction time was a reasonable assumption under the circumstances of this case was a disputed issue for the jury to resolve.[4]

VI. *Did the Trial Court Err in Allowing Expert Testimony by a City Employee?*

 Prior to trial the district court ruled that the City could not present expert testimony because it had failed to timely designate an expert witness. At trial, the City called as a witness the city engineer who was responsible for determining the timing of the signals used at the intersection in question. The initial questions that sparked the plaintiff's objection included the following:

Q: And what role did you play in the change that was made in this plan?

A: I made the decision on what had to be done on those changes.

Q: All right. And what did you base your decision on?

A: When it was discovered that there was a discrepancy between the speed they used to determine those timings, we also found that they had used a method that would be. . . .

The plaintiff objected on the basis that the witness was giving expert testimony in

---

4. The plaintiff also objected to the cross-examination of her expert with respect to the length of a change period interval in jurisdictions that do not use an all-red clearance light. On appeal, she claims error in the trial court's allowance of such testimony. Upon our review of those portions of the transcript cited by the plaintiff, we locate two objections by the plaintiff to such questioning, both *sustained* by the trial court. Therefore, we find no basis in the record to support the plaintiff's claim of error.

violation of the court's pretrial ruling. The trial court overruled the objection and the witness was allowed to testify concerning the City's determination about the appropriateness of the timing and the reasons for the City's change of the timing. In addition, the witness testified that the City does not use an all-red clearance, but uses a change interval. He also testified as to his personal observations of the intersection in question.

Iowa Rule of Civil Procedure 125 governs the discovery of and testimony by expert witnesses. In pertinent part, it states:

> Nothing in this rule shall be construed to preclude a witness from testifying as to (1) knowledge of the facts obtained by the witness prior to being retained as an expert or (2) mental impressions or opinions formed by the witness which are based on such knowledge.

Iowa R. Civ. P. 125(a)(1)(C). This court has previously examined the parameters of this rule in cases where a treating physician has not been designated as an expert. We have held the physician's testimony is, nonetheless, admissible under rule 125(a)(1)(C). *See Carson v. Webb,* 486 N.W.2d 278, 280–81 (Iowa 1992). The determining factor is not whether the witness's testimony is "opinion evidence that could not be the subject of lay testimony," but "whether [the] evidence, irrespective of whether technically expert opinion testimony, relates to facts and opinions arrived at by a physician in treating a patient or whether it represents expert opinion testimony formulated for purposes of issues in pending or anticipated litigation." *Id.* at 281.

The city engineer's testimony in the present case is analogous to the testimony of a treating physician. The city engineer, even if giving "opinion evidence that could not be the subject of lay testimony," was testifying as to facts obtained prior to the litigation and mental impressions and opinions formed upon the basis of such knowledge. Therefore, his testimony fell within rule 125(a)(1)(C) and was properly allowed by the trial court.

## VII. *Conclusion and Disposition.*

The trial court erred in admitting evidence of the plaintiff's settlement with Allen. Although we find no merit to the other alleged errors by the trial court, the plaintiff is entitled to a new trial because her substantial rights were prejudiced by the improper admission of settlement evidence. Therefore, we reverse the judgment in favor of the defendant and remand for a new trial. Costs are taxed to the defendant.

**REVERSED AND REMANDED.**

All justices concur except NEUMAN, J., who takes no part.