# IN THE COURT OF APPEALS OF IOWA

No. 13-1039
Filed November 13, 2014

**FRANK SOMMESE III,**
        Plaintiff-Appellee,

**vs.**

**AMERICAN BANK & TRUST
COMPANY, N.A.,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Scott County, Mary E. Howes,

Judge.


        An employer appeals from an adverse district court ruling that it breached

an employment contract, arguing the court erroneously excluded relevant

evidence. **AFFIRMED.**


        Cameron A. Davidson and Jeffrey D. Wright of Pappas, Davidson,

O'Connor & Fildes, P.C., Rock Island, Illinois, for appellant.

        Michael J. Motto of Bush, Motto, Creen, Koury & Halligan, Davenport,

Bridget R. Penick and Brant M. Leonard of Dickinson, MacKaman, Tyler &

Hagen, P.C., Des Moines, and Ari Karen and Stanley Todman of Offit Kurman,

P.A., Maple Lawn, Maryland, for appellee.


        Heard by Mullins, P.J., and Bower and McDonald, JJ.

**MULLINS, J.**

American Bank & Trust (ABT) appeals from a jury verdict that it breached an employment contract with Frank Sommese. The jury awarded Sommese $997,274.16 in unpaid commissions. ABT appeals, contending the district court abused its discretion when it excluded relevant documents. Finding the district court did not abuse its discretion, we affirm.

## I. BACKGROUND FACTS & PROCEEDINGS.

ABT[1] operated a banking business in which it generated home mortgage loans and sold the notes to other businesses for a profit. ABT carried on its operations in four separate "markets" or "profit centers" throughout the Chicagoland area. These were referred to as Oakbrook, Kane County, Chicago proper, and North Milwaukee Avenue.

In April 2008, ABT hired Sommese as its regional vice president. His principal duty was to recruit loan officers for the sale of home mortgage loans. Sommese entered into an employment contract whereby ABT would compensate him with commissions calculated as (1) twelve percent of monthly net revenue from "Chicago Market production" and (2) forty to fifty two percent of the "revenue generated" from the sale of notes to other businesses.[2] On December 20, 2010,

---

[1] ABT is incorporated in Iowa with its principal place of business in Davenport. It operates branches in eastern Iowa and the Chicagoland area. It is also incorporated in Illinois.

[2] The percentage of "revenue generated" owed to Sommese was based on a tiered compensation structure where Sommese would receive a higher commission if there was more revenue, according to the following table:

| | |
|---|---|
| Tier 1: $0-$12,500 | =40% of revenue generated |
| Tier 2: $12,5001[sic]-$30,000 | = 45% of revenue generated |
| Tier 3: $30,001 plus | = 52% of revenue generated |

Sommese resigned amid allegations that ABT had not paid him all the money he was owed under his employment contract.

Sommese filed a petition[3] asserting breach of the written employment contract, breach of duty of good faith and fair dealing, fraud, unjust enrichment, quantum meruit, and violations of the Illinois and Iowa Wage Payment and Collection Acts. Eventually, the claims for breach of duty of good faith and fair dealing, fraud, unjust enrichment, quantum meruit, and violations of Wage Payment and Collection Acts were all dismissed. The only claims submitted to the jury for verdict were Sommese's breach-of-contract claim and ABT's counterclaim alleging Sommese breached the restrictive covenant of his employment contract after he resigned and accepted other employment.

Sommese contended ABT skimmed money from their revenues before calculating the percentages owed to him. He also contended ABT misinterpreted the contract providing for Sommese to receive twelve percent of monthly net revenue from "Chicago Market production" to mean only those profits generated at ABT's Chicago proper and North Milwaukee Avenue profit centers. Sommese asserted his compensation from "Chicago Market production" should have included the entire Chicagoland area, including the profit centers located at Oakbrook and Kane County. ABT responded that—although not memorialized in writing—Sommese had agreed to a modification of his employment contract; that "Chicago Market" had always been understood to mean just the Chicago proper

---

[3] Although initially captioned as a complaint, with the court's approval it was later amended and captioned as an amended petition at law. *See* Iowa R. Civ. P. 1.403(2).

and North Milwaukee Avenue profit centers; and that ABT had not skimmed monies from net profits before calculating Sommese's commissions.

The claims went to trial December 2012. The trial lasted three days, and the parties submitted numerous exhibits. The jury rendered a verdict for Sommese on his breach-of-contract claim, awarding him damages of $997,274.16, and rejected ABT's counter-claim. ABT filed a combined motion for judgment notwithstanding the verdict and for new trial arguing, among other claims, the court should not have excluded certain documents it ruled were irrelevant. These documents included a chain of emails dated October 1, 2009, between Sommese's boss, ABT's regional vice president Jeff Gennarelli, and the president of real estate lending, Brian Boyles. ABT also offered several forms Gennarelli filled out and signed when he himself left ABT to join a different bank: Gennarelli's "new hire" form, Gennarelli's payroll form, and Gennarelli's "transition agreement." The court concluded it properly excluded these documents as irrelevant and denied ABT's motions. On appeal, ABT asks this court to vacate the jury's verdict on Sommese's breach-of-contract claim because the court's exclusion of those documents was improper and substantially affected ABT's rights.[4]

## II.    STANDARD OF REVIEW.

We review the district court's exclusion of evidence for an abuse of discretion. *Giza v. BNSF Ry. Co.*, 843 N.W.2d 713, 718 (Iowa 2014). Abuse occurs when discretion is exercised to a clearly unreasonable extent or for

---

[4] ABT does not appeal the jury's verdict denying ABT's counterclaim.

reasons or on grounds that are clearly untenable. *Graber v. City of Ankeny*, 616 N.W.2d 633, 638 (Iowa 2000). A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law. *Id.* Reversal is warranted only when a substantial right of the party is affected. *Id.*

## III. ANALYSIS.

The Iowa Rules of Evidence provide all relevant evidence is admissible except as provided by the Constitutions of the United States or the state of Iowa, by statute, by [the Iowa rules of evidence], or by other rules of the Iowa Supreme Court. Iowa R. Evid. 5.402. Evidence that is not relevant is not admissible. *Id.* Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Iowa R. Evid. 5.401. The trial court must determine whether there is a logical or rational connection between the fact which is sought to be proved and a matter of fact which has been made an issue in the case. *Graber*, 616 N.W.2d at 641. Even where evidence is relevant, the court may exclude it if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Iowa R. Evid. 5.403.

### A. The October 1, 2009 email chain.

ABT offered several emails between Jeff Gennarelli and Brian Boyles and alleged they contained a number of admissions about Sommese's compensation

structure and the sources from which he was to be paid under his employment

contract. The emails between Boyles and Gennarelli started as follows:

> **From: Brian Boyles**
> **Sent: Thursday, October 01, 2009 9:28 PM**
> **To: Jeff Gennarelli**
> **Subject: management com-new proposal**
>
> I would suggest sharing (according to your chosen allocation) among you and Chris.[5] If you in turn decide to pay Karl[6] and Frank [Sommese], this would come out of this portion as we have done in the past. (Frank inquired on it and I am sure it is related to lower commission this month)
>
> I would propose 7.5% of bottom line profit of entire company. It looks as if we are sitting at $240k profit now. . . . I do not have all operational expenses accounted for but I believe I will be close. This is pending any large adjustments from accounting.. which I do not know of any.
>
> Can you split up $18k [7.5% of $240,000]?
>
> Chris bonus structure does not work unless we are consistently over 225 units. Her bonus was in the black but at $1200 under that model
>
> Your thoughts? I will finalize these in the morning. Last item to finish.
>
> Email me tonight or early if you can.
>
> Good month. . . RE Sold and processing expense was down and we are able to recoup some lender credit expense this month.
>
> Approx $139k in Chicago. . pre-bonus and $101k in Iowa. . pre-bonus
>
> **From: Jeff Gennarelli**
> **Sent: Thursday, October 01, 2009 9:43 PM**
> **To: Brian Boyles**
> **Subject: RE: management comp-new proposal**

---

[5] Christine Leyden, another employee of ABT.
[6] Karl Trajcevski, another employee of ABT.

Sure I would say 8 and 8 and 2 to Karl.  Frank still made more than Chris and I.

**From: Jeff Gennarelli**
**Sent: Thursday, October 01, 2009 9:43 PM**
**To: Brian Boyles**
**Subject: RE: management comp-new proposal**

Fyi.  He only made $17k.  you are more than that.  Although, I am not disagreeing.

The email conversation then split into two threads.  The first thread commenced

at 9:48 p.m. and proceeded as follows:

**From: Jeff Gennarelli**
**Sent: Thursday, October 01, 2009 9:48 PM**
**To: Brian Boyles**
**Subject: RE: management comp-new proposal**

We will see next month.  Between Kramer and Milwaukee he's lucky I don't kick his ass.  LOL and he is still way ahead of me ytd. . lol

**From: Brian Boyles**
**Sent: Thursday, October 01, 2009 9:49 PM**
**To: Jeff Gennarelli**
**Subject: RE: management comp-new proposal**

Lol.  Ain't that a bi*ch in this business. . .those that do all the work. . get paid less.  This is why the next deal has to be a greater share of the profit.

**From: Jeff Gennarelli**
**Sent: Thursday, October 01, 2009 9:50 PM**
**To: Brian Boyles**
**Subject: RE: management comp-new proposal**

AMEN

The second thread commenced at 9:49 and proceeded as follows:

**From: Jeff Gennarelli**
**Sent: Thursday, October 01, 2009 9:49 PM**
**To: Brian Boyles**
**Subject: RE: management comp-new proposal**

Not to validate but Chris and I have had our asses kicked the last 3 months.

**From: Brian Boyles**
**Sent: Thursday, October 01, 2009 9:49 PM**
**To: Jeff Gennarelli**
**Subject: RE: management comp-new proposal**

I KNOW YOU HAVE!  IT IS WELL DESERVED!  AND THEN SOME . . . HE IS AN AGGRESSIVE MOTHER THOUGH . . . HE ACTS LIKE HE HAS DONE SOMETHING FOR IT.  LOL.

**From: Jeff Gennarelli**
**Sent: Thursday, October 01, 2009 9:49 PM**
**To: Brian Boyles**
**Subject: RE: management comp-new proposal**

Believe me he knows he has a good deal.

The court excluded the two different threads, each containing three emails.  At trial, ABT argued Sommese's compensation structure was changed—although not memorialized in writing—and the term "Chicago Market" in the employment agreement included only ABT's Chicago and North Milwaukee Avenue "profit centers" or "markets."  ABT argues that by "Kramer," Gennarelli meant loan officer "Marc Kramer who worked out of and was part of the Chicago profit center"; and by "Milwaukee," he meant the North Milwaukee Avenue profit center.  According to ABT, the email chains are probative of  its assertion that Sommese's compensation structure changed because (1) they show Sommese was to be paid management compensation for only the Chicago and North Milwaukee Avenue profit centers; (2) they show Gennarelli approved Sommese's pay for several months; (3) they show Sommese and Gennarelli were to be paid from different profit centers; (4) they bolster the credibility of Boyle's trial

testimony that Gennarelli and Sommese were responsible for separate and different "profit centers," and that Sommese was to be paid from the Chicago and North Milwaukee Avenue profit centers; (5) they show Gennarelli believed Sommese had a "good deal"; and (6) they show Gennarelli believed Sommese himself believed he had a "good deal." ABT further submits exclusion was prejudicial to it because ABT could have argued the emails' significance to the jury in closing arguments.

The district court excluded the email chains because "there was no indication that Mr. Sommese had any knowledge of the emails or was involved in them, and the Court found they were not directly referring to Mr. Sommese's compensation." The court found that Gennarelli and Boyles were discussing Gennarelli's compensation and how it would be divided, not Sommese's compensation. The court also found, despite ABT's insistence that the discussion shows Sommese was only being paid from the Chicago proper and Milwaukee profit centers, "[T]he statements were vague and ambiguous and clearly not meant to be taken seriously and did not mention Sommese by name."

Although the reasons for exclusion of the email chains were not precisely those articulated in rule 5.403, we cannot find that the district court's reasons are untenable or clearly unreasonable. The district court's reasoning that the emails are too vague to be probative on the breach-of-contract issues is not unreasonable. Gennarelli's glancing reference to "Kramer and Milwaukee" does not make ABT's assertion that Sommese's employment contract included commissions from only the Chicago proper and North Milwaukee Avenue profit

centers more likely. Whether Sommese had a good deal and whether he or anyone else believed he had a good compensation arrangement is not relevant to whether he was paid the amounts required under the contract. We find the district court did not abuse its discretion in excluding the emails.

**B.     Gennarelli's new hire form and payroll form.**

In May 2010, Gennarelli also left ABT and began a new job with Bridgeview Bank Mortgage Company (BBMC). ABT offered Gennarelli's new hire form with BBMC wherein he listed Sommese as a secondary emergency contact and a BBMC payroll form wherein Gennarelli provides "Frank Sommese" as the answer to a security access question, "What is the first and last name of your childhood best friend?" Sommese also testified at trial that he and Gennarelli had gone to high school together, and Gennarelli was Sommese's reference in his job application to ABT. ABT claimed this evidence was relevant because, if Gennarelli and Sommese were friends, it was less likely that Gennarelli would approve Sommese's pay being less than what ABT actually owed him by contract.

The district court excluded the forms because:

Gennarelli is not a party to the action and neither form has any information directly relating to the terms of Sommese's employment agreement with the [ABT]. Although they establish that Gennarelli and Sommese are friends, that was already in evidence. Sommese admitted he was very close friends with Gennarelli.

The district court properly exercised its discretion to determine that Gennarelli's employment documents with BBMC bear little logical or rational connection to ABT's assertion that the pay structure in Sommese's employment

contract was modified such that Sommese was compensated adequately under the contract. The court apparently found that to the extent the documents support an assertion that Sommese and Gennarelli were friends, that fact had been freely admitted by Sommese and admission of the documents in evidence would be a needless presentation of cumulative evidence. The district court did not abuse its discretion in excluding these documents.

### C.    Gennarelli's transition agreement.

ABT offered a transition agreement between Gennarelli and his new employer BBMC. In the transition agreement, Gennarelli warranted:

> There are no actions, suits, proceedings, orders, investigations, or claims pending or, to the best of the Principals' collective knowledge, threatened against either the American Bank Mortgage Division or any of the Principals, at law or in equity, or before or by any governmental department, commission, board, bureau, agency, or instrumentality; to the best of the Principals' collective knowledge, neither the principals nor the American Bank Mortgage Division are the subject of any governmental investigations or inquiries; and there is no basis for any of the foregoing.

ABT asserts Gennarelli's lack of knowledge of any such claim makes it more likely that Sommese never complained to Gennarelli about his pay, as Sommese testified he did. The district court found the form,

> was not entirely relevant to Sommese's claims against the bank. Additionally, if [Gennarelli] did not know about Sommese's employment disagreement with the bank, it was not probative enough to be admitted. It was simply a side issue document that would have confused the jury.

Whether Gennarelli knew of Sommese's claim is not a fact of consequence to the determination of whether ABT adequately paid Sommese on his employment contract. In addition, Gennarelli signed this transition agreement April 2010 and

Sommese did not file his petition until February 2011. We find the court did not abuse its discretion in excluding the transition agreement.

### D. Substantial rights of the party.

For each of the articles of evidence ABT contends the court erroneously excluded, ABT asserts its substantial rights were affected because it was deprived of the opportunity to "argue their significance to the jury during closing argument." ABT asserts each document "could have made a difference in the outcome of the case," yet elaborates little on how the outcome would have been different. We have found no abuse of discretion in the court's conclusions that the excluded articles of evidence were irrelevant, or if relevant, that exclusion was not improper under rule 5.403. We find no substantial rights of ABT were affected.

## IV. CONCLUSION.

We conclude the district court did not abuse its discretion in excluding the chain of emails, the new-hire form, the payroll form, and the transition agreement as irrelevant or otherwise excludable under rule 5.403. We further find no substantial rights of ABT were affected. Consequently, we affirm the district court ruling and the jury's verdicts.

**AFFIRMED.**