# IN THE COURT OF APPEALS OF IOWA

No. 15-1745
Filed November 9, 2016

**GILBERTO MENDEZ MARQUEZ,**
    Plaintiff-Appellant,

**vs.**

**DONALD P. LACINA and WESTWINDS REAL ESTATE SERVICES, INC.,**
    Defendants-Third Party Plaintiffs-Appellees.

vs.

**RODOLFO GONZALEZ and ROSARIO GONZALEZ,**
    Third Party Defendants-Appellees.
_____

Appeal from the Iowa District Court for Johnson County, Robert E. Sosalla, Judge.


Plaintiff Gilberto Mendez Marquez appeals evidentiary rulings following a jury verdict in favor of the defendants. **AFFIRMED.**


James K. Weston II of Tom Riley Law Firm, Iowa City, for appellant.

William J. Bush of Bush, Motto, Creen, Koury & Halligan, P.L.C., Davenport, for appellees Donald P. Lacina and Westwinds Real Estate Services, Inc.

Amber J. Hardin and Eric M. Knoernschild of Stanley, Lande & Hunter, P.C., Muscatine, for appellees Rodolfo Gonzalez and Rosario Gonzalez.


Heard by Danilson, C.J., and Doyle and McDonald, JJ.

**DOYLE, Judge.**

Gilberto Mendez Marquez (Mendez) sued an apartment building owner and the building's manager after slipping and falling down a flight of exterior stairs at an entrance to the building. Following a trial, the jury found the owner and manager were not at fault. The district court directed the clerk of court to enter the jury's verdict of record in accordance with the verdict.

On appeal, Mendez challenges the district court's rulings excluding two items of Mendez's proposed evidence. Specifically, Mendez argues the district court abused its discretion in excluding both a cell phone video of the area where he fell and the deposition testimony of a psychologist who had examined Mendez in the past. Because Mendez has failed to show the district court abused its discretion in excluding these matters, we affirm the court's order directing the clerk to enter the jury's verdict of record in accordance with the verdict.

### I. Background Facts and Proceedings.

On February 22, 2008, Mendez sustained severe injuries when he slipped and fell down the exterior concrete stairs that led down to his son's apartment. The apartment building was owned by Donald Lacina and managed by Westwinds Real Estate Services, Inc. (Westwinds). Rodolfo and Rosario Gonzalez were hired by Westwinds "to shovel and salt the sidewalk/stairwell" of the building.

Mendez filed suit against Lacina and Westwinds, alleging they were negligent in failing to keep the entryway clear of snow and ice. Lacina and Westwinds denied they were negligent, and they asserted a third-party claim for contribution and/or indemnity against the Gonzalezes.

During discovery, Mendez produced to Defendants[1] a cell-phone video taken of the premises where Mendez fell, showing stairs and sidewalks covered in snow. Defendants moved to exclude the video from trial, arguing the video was not relevant because it was taken approximately eleven months after Mendez's fall and did not show the condition of the stairs at the time of his fall. Defendants asserted that the value of the evidence was outweighed by its prejudice to Defendants. In response, Mendez stated: "The video is intended to be used as impeachment evidence only, and therefore it would not be appropriate to exclude it in limine before [Defendants] have testified."

Additionally, Mendez designated as his expert witnesses the "Physicians and Staff of LBR Psychological Consultants, including but not limited to, Luis Rosell Psy, D." Mendez stated his designated experts had not been retained in anticipation of trial but rather were his medical providers and were therefore fact witnesses with specialized education, training, and experience. Because Mendez did not designate those witnesses as experts offering opinions on the issues of causation, permanency, or future medical expenses, Defendants' moved to exclude any testimony from Mendez's witnesses regarding such opinions.

Prior to trial, the district court granted Defendants' motions in limine and ruled that the cell phone video and Dr. Rosell's deposition testimony be excluded from evidence. During trial, Mendez requested the court reconsider its rulings. He argued the video was admissible to impeach Mrs. Gonzalez's testimony

---

[1] We refer to Lacina, Westwinds, and the Gonzalezes collectively as "Defendants."

in that she changed her deposition testimony from saying she had not been [at the apartment building] from five days before the fall until sometime after the fall to testify that she was there. She went there regularly most days to examine the property without pay. I think that opens the door to allowing the video in.

The court responded:

Unless the video was taken within the time frame that Mrs. Gonzalez testified about, I fail to see what relevance it has. It certainly does not impeach anything that she said in terms of what she was doing in February 2008. That video is not in that same time frame. My understanding it is not. It's like eleven months later.

The court stood on its previous ruling excluding the video, but it received the video as an offer of proof.

Concerning Dr. Rosell's proposed testimony, Mendez asserted the testimony was "admissible as showing a possibility of causation along with, or coupled with the testimony that has happened in this trial from non-experts that [Mendez's] condition did not exist prior to the fall . . . [and] would allow [Mendez] to meet his burden of proof in that regard." Mendez also argued that testimony would assist the jury in understanding the issues in the case. Again, the court stood on its previous ruling excluding Dr. Rosell's deposition testimony, but received the testimony as an offer of proof.

The jury subsequently found Lacina and Westwinds were not at fault, and the court entered its order directing the clerk to enter the jury's verdict of record in accordance with the verdict. Mendez now appeals.

## II. Scope and Standards of Review.

A district court's evidentiary rulings, including its determination of whether a witness may testify as an expert on a particular topic or to admit relevant

evidence, are reviewed for an abuse of discretion. *See Giza v. BNSF Ry. Co.*, 843 N.W.2d 713, 718 (Iowa 2014); *Quad City Bank & Trust v. Jim Kircher & Assocs.*, *P.C.*, 804 N.W.2d 83, 92 (Iowa 2011); *Graber v. City of Ankeny*, 616 N.W.2d 633, 638 (Iowa 2000). "An abuse of discretion occurs 'when the district court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable.'" *Rowedder v. Anderson*, 814 N.W.2d 585, 589 (Iowa 2012) (citation omitted). "A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law." *Graber*, 616 N.W.2d at 638. Consequently, under the abuse-of-discretion standard, our court "will correct an erroneous application of the law." *Rowedder*, 814 N.W.2d at 589.

### III. Discussion.

On appeal, Mendez contends the district court abused its discretion in excluding the two items of evidence. He asserts the exclusion was prejudicial, entitling him to a new trial.

### A. Video.

The determination of whether evidence should be admitted requires the court to first determine if the evidence is relevant. *See Graber*, 616 N.W.2d at 638. "Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case." *See* Iowa R. Civ. P. 5.401 cmt. (setting forth the advisory committee's notes to Federal Rule of Civil Procedure 401, upon which our rule is based). Thus, evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less

probable than it would be without the evidence" is relevant evidence. *Pexa v. Auto Owners Ins. Co.*, 686 N.W.2d 150, 158 (Iowa 2004) (quoting Iowa R. Evid. 5.401). Ultimately, the "test is 'whether a reasonable [person] might believe the probability of the truth of the consequential fact to be different if [the person] knew of the proffered evidence.'" *McClure v. Walgreen Co.*, 613 N.W.2d 225, 235 (Iowa 2000) (alteration in original) (citation omitted).

If the evidence is irrelevant, it is not admissible. *See Graber*, 616 N.W.2d at 637; *see also* Iowa R. Evid. 5.402. But, if the court finds the evidence is relevant, it moves to the second consideration: whether the evidence's probative value is "substantially outweighed" by the danger of prejudice or confusion. *Graber*, 616 N.W.2d at 638; *see also* Iowa R. Evid. 5.403. "'[P]robative value' gauges the strength and force" of the evidence's relevancy, and "'[u]nfair prejudice' is the 'undue tendency to suggest decisions on an improper basis, commonly though not necessarily, an emotional one.'" *McClure*, 613 N.W.2d at 235 (citations omitted). The court's discretion concerning the admissibility of evidence is broad and extends to its balancing of the evidence's probative value versus its prejudicial value under rule 5.403. *See Horak v. Argosy Gaming Co.*, 648 N.W.2d 137, 149 (Iowa 2002); *see also Johnson v. Knoxville Cmty. Sch. Dist.*, 570 N.W.2d 633, 640 (Iowa 1997) ("The balancing decision under rule 403 is also a matter for the trial court's discretion.").

On appeal, Mendez asserts:

> [Mrs.] Gonzalez testified that she and her husband made trips to the apartment on days when it didn't snow, as often as twice a day, to make sure there was no snow buildup. In addition, she testified that she had never seen the stairs in a slippery condition, and that the stairs are covered and snow does not fall on them.

Mrs. Gonzalez testified at trial that, in addition to her trips to the apartment building to clean apartments and check on the laundry room, she and her husband made special trips to make sure there was no snow built up. They "would go often. Sometimes it would be two times a day or three times a week. It varied." "When there was snow, [they] would go in the mornings and then in the afternoon." She testified it was her husband who did the majority of the snow removal, and she did more of the cleaning at the building. She testified no bill was submitted to Lacina or Westwinds for any work done regarding snow removal between February 17 and February 26, 2008, "obviously because there was no snow. So [they] didn't do work because there was no snow, so there was nothing to remove. [She could not] send a date of something that [they] did not do the work for." The following exchange later occurred:

> Q: Have you ever seen the stairs at that apartment building when they were slippery? A: No, I have never seen them that way because they are pretty far down and they are pretty covered, so snow does not fall on them.
> Q: So just so I understand, are you saying that the stairs don't get snow on them because they are covered? A: Well, when it blow, perhaps some can fall there. But that's what we are ready, so we can shovel, remove it and throw some salt.

Mendez argues on appeal that "[a]t a minimum, the video impeaches her statement about snow not falling on the stairs and that they are never in a slippery condition," and "[t]his would impeach her testimony that the Gonzalezes made sure the area was clear of snow at all times."

We agree with the district court that the video does not impeach anything that Mrs. Gonzalez said in terms of the snow clearing practices she and her husband employed in February 2008. The video was made some eleven months

later. The video does not depict the condition of the stairs at the time of Mendez's fall, so it could not possibly impeach Gonzalez's conclusory testimony there "obviously" was no snow on the stairs at the time of the fall. Although Gonzalez's trial testimony is not crystal clear, it appears she was not at the apartment on February 22, the day of Mendez's fall, so she could not have observed the condition of the stairs. Even if she had been there on the day of Mendez's fall, she gave no testimony as to her observations of the stairs. Gonzales first stated the stairs "are pretty covered" and snow does not fall on them, but she immediately clarified that statement by saying snow can fall on the steps when it blows. That snow can fall on the steps was confirmed by photographs, admitted without objection, which depict some snow, both at the top of the stairs and at the bottom of the stairwell. In this regard, the video is cumulative to the photographs, albeit the video depicts a larger quantity of snow on the steps. We conclude the video has only marginal impeachment value, if any, and it was not an abuse of discretion to exclude it.

**B. Deposition Testimony.**

Mendez also argues the district court erred in excluding the deposition testimony of Dr. Rosell. He asserts Defendants only challenged the exclusion of his testimony on the basis that his opinions were not provided sufficiently in advance of trial, but later they changed tactics at trial when they sought exclusion based upon "a lack of causation testimony." However, the Gonzalezes' motion in limine expressly sought exclusion of any of the experts identified by Mendez because Mendez did not disclose any expert relating to the issues of causation

or permanency. Lacina and Westwinds joined the Gonzalezes' motion. Clearly, Defendants' motions expressed their dispute concerning causation.

In any event, Mendez argues Dr. Rosell's deposition should have been admitted "on the issue of whether the fall caused [Mendez's] cognitive defects" and "was important on the issue of [Mendez's] credibility." Even assuming without deciding that was true, the claimed error relates only to evidence dealing with causation and damages, not Mendez's right to recover. An "improper ruling on evidence offered to prove damages is not reversible error when the jury finds in favor of the defendant on liability." *Shawhan v. Polk Cty.*, 420 N.W.2d 808, 810-11 (Iowa 1988); *Humphrey v. Happy*, 169 N.W.2d 565, 570 (Iowa 1969) ("The exclusion of admissible evidence which could not, if received, have changed the result is harmless error."). Although it is true that Iowa holds a liberal view on the admissibility of expert testimony, *see Leaf v. Goodyear Tire & Rubber Co.*, 590 N.W.2d 525, 531-32 (Iowa 1999), the jury found Lacina and Westwinds were not at fault for Mendez's fall. Thus, even if the fall caused Mendez's cognitive defects as alleged by Mendez, errors in excluding the testimony, if any, were cured by the verdict for Lacina and Westwinds. *See Humphrey*, 169 N.W.2d at 570.

### *IV. Conclusion.*

Because we find the court did not abuse its discretion in excluding the video evidence, and any error concerning the admissibility and exclusion of Dr. Rosell's deposition testimony was harmless, we affirm the jury's verdict.

**AFFIRMED.**