STATE of Iowa, Appellee,

v.

Edward Henry WELLS, Jr., Appellant.

No. 00–0324.

Supreme Court of Iowa.

May 31, 2001.

As Corrected June 12, 2001.

Rehearing Denied July 3, 2001.

State can bring multiple serious misdemeanor charges of livestock neglect when the charges stem from the same uninterrupted period of neglect. We affirm in part, reverse in part, vacate the sentence, and remand for resentencing.

## I. Background Facts and Proceedings.

Edward Wells, Jr., operated a boarding house for horses on a farm near Cumming, Iowa. Wells boarded his own horses, as well as horses owned by others. As manager of the horse facility, Wells was responsible for providing adequate sustenance to the horses. Wells had been around horses nearly his entire life, and was familiar with the practice of care.

On November 16, 1998, the Warren County Sheriff's Department received an anonymous telephone call informing them that dead horses could be found in the northwest field of Wells' farm. Deputy Sheriff Rick Champ investigated the report the same day. As he drove on the road next to the farm, he observed two dead horses on the northwest corner of Wells' field.

Champ took several photographs of the dead horses from an area adjacent to Wells' property. Champ then stopped at Wells' residence to discuss the report. Wells acknowledged he was the owner of the two dead horses. Wells and Champ then walked through the field to the location of the dead horses. Champ observed the two horses were extremely thin. The bones of both horses were clearly visible to the naked eye. In his experience as a police officer, Champ had observed numerous dead animals, many of which had died from starvation. From his personal experiences and his own observation of the horses, Champ concluded malnourishment was the cause of death. He informed Wells

Rod Powell of Powell Law Firm, P.C., Norwalk, for appellant.

Thomas J. Miller, Attorney General, Richard J. Bennett, Assistant Attorney General, Kevin Parker, County Attorney, and Diana L. Rolands, Assistant County Attorney, for appellee.

CADY, Justice.

This is an appeal from a judgment and sentence following a jury trial for two counts of livestock neglect in violation of Iowa Code section 717.2(2) (1997). The principal issue presented is whether the

he would return the next day with a search warrant to seize the animal carcasses.

Champ subsequently applied for a search warrant to obtain evidence to substantiate his findings. In the application for the warrant, Champ described the emaciated appearance of the horses and concluded the horses had possibly died from starvation. Champ explained the purpose of the search warrant was to retrieve the carcasses so a veterinarian could perform tests to determine the cause of death. The district court issued the search warrant.

Champ executed the warrant the following day. He was accompanied by Dr. Brian Brennan, a doctor of veterinarian medicine. Champ took more photographs of the horses, while Dr. Brennan conducted autopsies on both horses. Shortly after the execution of the warrant, Wells gave a statement to Champ in which he claimed both horses had died in a storm approximately one week earlier. Wells believed the two horses had been struck by lightning.

Dr. Brennan took tissue samples from one of the horses during the autopsies. He did not take samples from the other horse because it had been partially consumed by scavengers. Both of the horses had begun to decompose. The samples were abstracted from the horse's heart, liver, kidney, and intestine. Dr. Brennan rendered a preliminary finding of starvation as the cause of death in both of the horses. He then sent the tissue samples to the Iowa State Diagnostic Lab, where Dr. Patrick G. Halbur further examined the samples. Dr. Halbur was a doctor of veterinarian medicine, as well as an associate professor of pathology at Iowa State University.

Dr. Halbur concluded the horse had been mobilizing its stored body fat. He believed this was caused by either malnourishment or metabolic disease, but was unable to conclude which of these two conditions actually caused the horse's death.

Considering his personal observation of the horses, the results of the autopsies, and Dr. Halbur's analysis, Dr. Brennan concluded both horses had died of starvation. As a result, Wells was charged with two counts of livestock neglect in violation of Iowa Code section 717.2(1) and section 717.2(2).

Wells filed a motion to dismiss one of the counts. He contended section 717.2(2) prohibited the State from filing multiple charges of livestock neglect when the death of the livestock stemmed from a single uninterrupted period of alleged neglect. Wells also filed a motion to suppress, alleging the search warrant was not supported by probable cause. Wells further claimed the photographs taken by Champ during the execution of the search warrant should be suppressed as irrelevant and unfairly prejudicial. Champ took twenty-three photographs.

At the hearing on the motions, the State suggested a motion in limine, not a motion to suppress, was the more appropriate template for raising the issue of the admissibility of the photographs. Wells then offered to set forth the issue in a motion in limine at a later time, but acknowledged the court could properly rule on this issue by suppressing the photographic evidence as fruits of an illegal search. The court did not comment on what motion constituted the proper method to address the issue.

The district court denied the motion to suppress and the motion to dismiss. Additionally, the court found thirteen of the photographs were admissible, but held the remaining ten photographs were inadmissible due to their inflammatory nature.

At trial, Champ described his observations of the dead horses and the crime

scene, as well as the circumstances surrounding the execution of the search warrant. Dr. Halbur explained the tests he performed and his conclusions.

Dr. Brennan detailed the analysis which formed his finding of starvation. He found no fat surrounding the abdomen or heart, which suggested to him that the horses were forced to utilize their stored body fat in the absence of adequate nourishment. In addition, Dr. Brennan found no evidence of any other causes of death, such as metabolic disease. Moreover, he could find no indication the horses had been struck by lightning or were the victims of other adverse weather conditions.

Wells testified on his own behalf, as did David Spiering and Carrie Flynn. Spiering had provided Wells hay to feed his horses during the period of time prior to the discovery of the dead horses. Flynn was a former employee of Wells, and was working for Wells when the horses died. Wells described his care and maintenance of the two dead horses, as well as the other horses on the farm. Furthermore, Wells testified the two horses died in a storm, probably by lightning or from exposure.

Marlys Larsen was called as a rebuttal witness by the State. She was a neighbor of Wells and testified to specific instances of horse mistreatment by Wells. She also gave testimony of the community's adverse perception of Wells.

At the close of the evidence, Wells moved for a directed verdict, alleging insufficiency of the evidence. The district court denied the motion.

The jury returned guilty verdicts on both charges of livestock neglect. Wells subsequently filed a motion for new trial, contending the jury had been tainted after allegedly overhearing Larsen and her friend make disparaging remarks about Wells outside of the courtroom before closing arguments. An affidavit signed by Wells was the only evidence presented to support the claim.

In addition, Wells filed a motion in arrest of judgment. He argued the guilty verdicts were against the weight of the evidence as no expert testimony regarding starvation had been introduced by the State. Wells further claimed Larsen provided improper character evidence. The district court denied both motions. The court then sentenced Wells to one year incarceration for each count, but suspended the sentences and placed him on probation with a condition that he perform 150 hours of community service at the Animal Rescue League. The two sentences were directed to run concurrently.

Wells appeals. He argues the district court erroneously permitted the State to file multiple charges of livestock neglect under section 717.2(2) when the State acknowledged there was only one incident of neglect. Wells also argues the search warrant was not supported by probable cause and all the photographs should have been excluded from the trial. Finally, Wells claims the district court erroneously denied his motions for new trial and in arrest of judgment.

## II. Scope of Review.

We review a motion to dismiss a charge alleged in a trial information for the correction of errors at law. *State v. Johnson*, 528 N.W.2d 638, 640 (Iowa 1995). Likewise, we review issues of statutory interpretation for errors at law. *Id.*

We review the district court's denial of the motion to suppress the fruits of the search warrant de novo because Wells asserts his constitutional rights were violated when the warrant was issued without probable cause. *State v. Ortiz*, 618 N.W.2d 556, 558–59 (Iowa 2000); *State v.*

*Prior,* 617 N.W.2d 260, 262–63 (Iowa 2000); *State v. Leto,* 305 N.W.2d 482, 484 (Iowa 1981). Additionally, we review district court rulings on the admissibility of evidence and juror misconduct claims for an abuse of discretion. *See Graber v. City of Ankeny,* 616 N.W.2d 633, 638 (Iowa 2000) (general admissibility of evidence); *State v. Powell,* 400 N.W.2d 562, 565 (Iowa 1987) (juror misconduct); *State v. Chadwick,* 328 N.W.2d 913, 917 (Iowa 1983) (admissibility of photographs). Furthermore, we uphold district court rulings on sufficiency of the evidence claims unless the guilty verdict is not supported by substantial evidence. *State v. McDaniel,* 512 N.W.2d 305, 309 (Iowa 1994); *State v. Hall,* 235 N.W.2d 702, 715–16 (Iowa 1975).

### III. Livestock Neglect.

Iowa Code section 717.2 makes it a crime to neglect livestock. It defines the crime as failing to provide proper care or depriving necessary sustenance to confined livestock. Iowa Code § 717.2(1)(a), (b).[1] The crime is classified as a simple misdemeanor. *Id.* § 717.2(2). However, if an individual intentionally commits the offense and the livestock suffers serious injury or dies as a result of the neglect, the individual is guilty of a serious misdemeanor. *Id.* Additionally, this section further defines the units of prosecution available under the statute. It provides that an individual

> shall not be guilty of more than one offense of livestock neglect punishable as a serious misdemeanor, when care or sustenance is not provided to *multiple head* of livestock during any period of uninterrupted neglect.

*Id.* (emphasis added). It is this portion of the statute which serves as the basis for the principal issue presented. We must decide if the statute limits the prosecution under the facts of this case to one count of serious misdemeanor livestock neglect.

### A. Motion to Dismiss.

■ The State first claims that the motion to dismiss filed by Wells was not the proper mechanism to challenge duplicative counts in the trial information. It claims that the grounds to support a motion to dismiss are specified by Iowa Rule of Criminal Procedure 10(6)(a) and (c), and do not include duplicative counts of a trial information.

■ We agree with the State that, at the time the trial information was filed in this case, a motion to dismiss was not a proper vehicle to challenge duplicative counts in a trial information without first challenging the sufficiency of the evidence by filing a request for a bill of particulars.[2]

1. Iowa Code section 717.2 provides:
 1. A person who impounds or confines livestock, in any place, and does any of the following commits the offense of livestock neglect:
 *a.* Fails to provide livestock with care consistent with customary animal husbandry practices.
 *b.* Deprives livestock of necessary sustenance.
 *c.* Injures or destroys livestock by any means which causes pain or suffering in a manner inconsistent with customary animal husbandry practices.
 2. A person who commits the offense of livestock neglect is guilty of a simple misdemeanor. A person who intentionally commits the offense of livestock neglect which results in serious injury to or the death of livestock is guilty of a serious misdemeanor. . . .

2. We recognize Iowa Rule of Criminal Procedure 10(6)(a) was amended during the pendency of this appeal to remove the language supporting our holding in *State v. Graham* that a bill of particulars is a prerequisite to a motion to dismiss. *See State v. Graham,* 291 N.W.2d 345, 350 (Iowa 1980). Rule 10(6)(a) now permits a defendant to file a motion to dismiss based on particulars stated in "the indictment or information and the minutes of evidence" and imposes an obligation on the

*State v. Graham,* 291 N.W.2d 345, 350 (Iowa 1980). A bill of particulars is a prerequisite to a motion to dismiss an information under rule 10(6)(a). *Id.* Clearly, Wells did not first request the State to produce evidence to support a multiple count information based upon interrupted or separate incidences of neglect. Nevertheless, the State did not resist the motion to dismiss on the grounds that separate counts were supported by interrupted neglect, but claimed section 717.2 permitted multiple counts even with uninterrupted neglect. The parties acknowledge the issue did not rest on the sufficiency of evidence, but involved an interpretation of the statute. The challenge raised by Wells was presented to the district court on that basis. Under these circumstances, a bill of particulars was unnecessary and the issue was properly raised by the motion to dismiss.

### B. Multiple Counts.

 Our legislature has both the power and responsibility to describe crimes and fix punishment. *State v. Schmidt,* 588 N.W.2d 416, 419 (Iowa 1998); *State v. Fuhrmann,* 261 N.W.2d 475, 479 (Iowa 1978); *State v. Nelson,* 178 N.W.2d 434, 437 (Iowa 1970). Thus, the elements of each offense are derived from the statute. *State v. Sangster,* 299 N.W.2d 661, 663 (Iowa 1980). Similarly, the question of how many convictions are lawful under a statute rests with the legislative intent. *State v. Kidd,* 562 N.W.2d 764, 765 (Iowa 1997); *see United States v. Freisinger,* 937 F.2d 383, 388 (8th Cir.1991); *Castaldi v. United States,* 783 F.2d 119, 121 (8th Cir. 1986). Any doubt as to the legislative intent of the appropriate units of prosecution must be resolved in favor of the accused. *Freisinger,* 937 F.2d at 388 (statute which prohibited carrying "a firearm" during the commission of a drug offense permits multiple counts for carrying multiple firearms); *Castaldi,* 783 F.2d at 121 (statute prohibiting counterfeiting of "any postage stamp" permitted multiple counts for each denomination of postage stamps); *Kidd,* 562 N.W.2d at 766 (statute prohibiting possession of weapon permits multiple counts for multiple weapons).

The language of section 717.2 expressly prohibits multiple convictions for a serious misdemeanor offense of livestock neglect "when care or sustenance is not provided to multiple head of livestock during any period of uninterrupted neglect." Iowa Code § 717.2(2). The State argues this language means only one conviction can result for serious misdemeanor livestock neglect when the same neglect occurs to a herd of livestock. Yet, the State claims the two horses in this case did not constitute a herd, and were not part of a larger group of horses.

 We begin by considering our well-established "principle of statutory construction that when a statute is plain and its meaning is clear, [we] should not reach beyond the express terms of the statute." *Garwick v. Iowa Dep't of Transp.,* 611 N.W.2d 286, 289 (Iowa 2000); *see Schmidt,* 588 N.W.2d at 419–20; *Saadiq v. State,* 387 N.W.2d 315, 319 (Iowa 1986); 2A Norman J. Singer, *Sutherland Statutory Construction* § 46.01, at 113 (6th ed.2000). We consider legislative intent only when the statutory terms are ambiguous. *Garwick,* 611 N.W.2d at 289. The terms of the statute are ambiguous "if reasonable

prosecuting attorney to respond with a bill of particulars to cure the defect claimed in the motion to dismiss. Iowa R. Crim. P. 10(6)(a) (2001). Although procedural amendments can be applied retroactively, we are reluctant to apply the amended rule to this case because the State could not have known that it was required to resist the motion by filing a bill of particulars. Nevertheless, this is an issue that we do not need to address.

minds could differ ... as to the meaning of the statute." *Carolan v. Hill,* 553 N.W.2d 882, 887 (Iowa 1996). Moreover, we have held that undefined statutory terms should be accorded their plain and ordinary meaning. *State ex rel. Attorney Gen. of Iowa v. Terry,* 541 N.W.2d 882, 887–88 (Iowa 1995).

We believe section 717.2 is clear and unambiguous. The State's argument substitutes the phrase "herd of livestock" for "head of livestock." In the context of livestock, the word "head" is commonly defined as "one of a number." *Webster's New Collegiate Dictionary* 522 (1981); *see State v. Sailer,* 587 N.W.2d 756, 760 (Iowa 1998) (we consider the context in which the term is used). Thus, multiple head of livestock under the statute plainly refers to more than one.

 The object of the offense is livestock neglect. The statute seeks to prohibit a person who confines livestock from neglecting the animals. When neglect is uninterrupted or continuous, results in serious injury or death, and involves multiple livestock, the statute makes it clear that only one conviction can result. Multiple convictions are not based on the number of livestock, but on the separate incidents of neglect.[3] *See State v. Vandewater,* 203 Iowa 94, 100, 212 N.W. 339, 342 (1927) (separate incident of larceny is committed only when different items were taken in separate and distinct transactions).

 The State further argues that the statute merely defines an affirmative defense which Wells did not raise. It points out that the statute does not prohibit the prosecution of multiple counts, but only

provides "a person shall not be guilty of" multiple offenses. Iowa Code § 717.2(2).

 We reject the notion that the statute defines an affirmative defense. An affirmative defense places the burden on the defendant to submit evidence to support the defense. *See State v. Lawler,* 571 N.W.2d 486, 489 (Iowa 1997); *State v. Delay,* 320 N.W.2d 831, 834 (Iowa 1982). If section 717.2 defined an affirmative defense, the defendant would be required to prove the period of neglect was uninterrupted. We do not interpret the statute to impose such an absurd result. *See State v. Schultz,* 604 N.W.2d 60, 62 (Iowa 1999) (we do not construe a statute in a manner which creates an absurd result).

 We conclude the statute prohibits prosecution of multiple counts of livestock neglect as a serious misdemeanor based on uninterrupted neglect to multiple head of livestock. When multiple counts are brought in a case involving neglect resulting in serious injury or death of a multiple number of livestock, the period of neglect becomes an element of the crime and each count must be supported by a separate period of uninterrupted neglect. *See State v. Butler,* 415 N.W.2d 634, 637 (Iowa 1987) (two offenses can be prosecuted out of the same incident if each offense requires proof of a separate element not required in the other offense). Under the evidence as well as the stated theory of the case, Wells was only subject to prosecution for one count of livestock neglect.

## IV. Motion to Suppress.

 A search warrant may be issued only upon a finding of probable cause by a judge. *State v. Beckett,* 532 N.W.2d

---

**3.** The reference in section 717.2 to the number of convictions of guilt for multiple head of livestock relates only to livestock neglect punishable as a serious misdemeanor. *See* Iowa Code § 717.2(2). We do not address the issue of the number of convictions for livestock neglect as a simple misdemeanor.

751, 753 (Iowa 1995). Although we give substantial deference to the judge's finding of probable cause, we must ensure the judge did not merely ratify the bare conclusions of the applicant. *Beckett,* 532 N.W.2d at 753–54; *see State v. Simpson,* 528 N.W.2d 627, 634 (Iowa 1995). The test for determining whether probable cause supported the search warrant is "whether a reasonable person would believe a crime was committed on the premises or that evidence of a crime could be located there." *Simpson,* 528 N.W.2d at 634; *see State v. Seager,* 341 N.W.2d 420, 426–27 (Iowa 1983). In reviewing the judge's determination, we only consider the information presented to the judge in the application for the search warrant. *State v. Godbersen,* 493 N.W.2d 852, 855 (Iowa 1992). Additionally, the information needed for a finding of probable cause to support a search warrant is far less demanding than the information necessary to sustain a conviction. *See Leto,* 305 N.W.2d at 485–86.

▆▆▆▆ We conclude the district court had a substantial basis for finding probable cause existed to support the issuance of the search warrant to obtain the horse carcasses from Wells' property. In the application for the warrant, Officer Champ described his observations of the horses and his belief that the horses had possibly died from starvation. In his experience as deputy sheriff, Wells had observed numerous dead animals, including many that had died from starvation. An officer's opinion based on his personal experiences as a police officer is a factor for the judge to consider in reviewing an application for a warrant. *See Godbersen,* 493 N.W.2d at 855–56. Moreover, the information Champ included in the application amounted to more than a mere suspicion that the animal carcasses were connected with criminal activity engaged in by Wells. *See*

*Seager,* 341 N.W.2d at 427–28 (mere suspicion of criminal activity insufficient to support issuance of warrant); *Leto,* 305 N.W.2d at 485 (same); *State v. King,* 256 N.W.2d 1, 5 (Iowa 1977) (mere subjective conclusions of applicant insufficient).

## V. Admissibility of Photographic Evidence.

▆▆▆▆ Wells raised his claim that all the photographs should have been excluded from trial in a motion to suppress. The State contends Wells failed to preserve error when he failed to file a motion in limine. We agree that a motion in limine is the favored method of raising admissibility of evidence issues. *See* 60 C.J.S. *Motions and Orders* § 2, at 6 (1969). However, the title of a motion does not control our rulings on preservation issues. *State v. O'Connell,* 275 N.W.2d 197, 202 (Iowa 1979). To the contrary, we are guided by what the district court did or purported to do in ruling on the motion. *Id.*

In this case, we find the district court did rule on the admissibility of the photographs as if it had been raised in a motion in limine. Furthermore, the ruling was definitive and Wells was not further required to object at trial. *See State v. Tangie,* 616 N.W.2d 564, 569 (Iowa 2000) (when court rules on admissibility of evidence in a motion in limine, objection must not be renewed at trial); *State v. Mark,* 286 N.W.2d 396, 410 (Iowa 1979) (same); *O'Connell,* 275 N.W.2d at 197 (same). We conclude Wells preserved error on this issue.

▆▆▆▆ We engage in a two-prong test to determine whether the district court abused its discretion in admitting evidence: (1) whether the evidence is relevant, and, if so, (2) whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *Graber,* 616 N.W.2d at 638; *Chadwick,* 328 N.W.2d

at 916–17. Evidence is relevant if it makes the existence of a consequential fact more or less probable. Iowa R. Evid. 401; *Graber*, 616 N.W.2d at 638; *Chadwick*, 328 N.W.2d at 917. The photographs admitted by the district court were relevant. They depicted the condition of the dead horses and the property where the horses were found. Moreover, the jury could have used these photographs to aid in its evaluation of the testimony presented by both the State and defense. *See Chadwick*, 328 N.W.2d at 917. We have previously admitted photographs of allegedly neglected animals to aid the fact finder in its deliberations. *See State v. Walker*, 236 N.W.2d 292, 294–96 (Iowa 1975) (photographs of nine cows and calves that had been dead for several weeks, had begun to decompose, and had been partially consumed by scavengers); *State v. Thompson*, 239 Iowa 907, 909–10, 33 N.W.2d 13, 14–15 (1948) (photographs of allegedly neglected dogs and their pens taken by newspaper photographer as the Animal Rescue League took the dogs from their keeper). Furthermore, the district court alleviated any potential prejudice by excluding the photographs that displayed severe decomposition and consumption by scavengers. Thus, any prejudice created by the admission of the photographs was outweighed by their probative value.

## VI. Sufficiency of the Evidence.

Wells also contends the guilty verdicts are not supported by substantial evidence in the record. The State counters Wells failed to preserve error on the sufficiency of the evidence issue, claiming a motion in arrest of judgment was not the proper mechanism to address the issue. However, we find Wells preserved this claim when he filed a motion for directed verdict, alleging insufficiency of the evidence, at the close of the presentation of the evidence.

Even though we find Wells preserved error, we deem his claim without merit. When considering sufficiency of the evidence claims, we examine the evidence in a light most favorable to the State. *McDaniel*, 512 N.W.2d at 309; *Hall*, 235 N.W.2d at 715. We are bound by the jury's verdict unless it is not supported by substantial evidence. *McDaniel*, 512 N.W.2d at 309. Moreover, we defer to the fact finder's determinations concerning witness credibility. *See State v. Hopkins*, 576 N.W.2d 374, 377 (Iowa 1998); *State v. Martin*, 341 N.W.2d 728, 729 (Iowa 1983). The testimony of Dr. Brennan, Dr. Halbur, and Officer Champ, considered together with the photographs, were substantial evidence for the jury to find Wells guilty of one count of livestock neglect.

## VII. Remaining Issues.

We conclude Wells did not preserve error on his remaining claims. Wells first raised the allegation of juror misconduct in a motion for new trial. Although Wells observed the alleged jury communication incident prior to closing arguments, he claims he did not realize the significance of what he witnessed until after the jury had returned the verdicts. However, Wells' contention contravenes the rationale underlying the requirement that an objection must be made once the grounds become apparent. *See State v. Jackson*, 397 N.W.2d 512, 514 (Iowa 1986). If Wells would have raised the issue to the district court prior to the time the jury commenced deliberations, the court would have been able to consider the claim and, if necessary, taken steps to alleviate any prejudice that may have occurred. *Id.* Instead, Wells waited for a verdict, and when it was unfavorable, he then complained. In essence, Wells was gambling,

and we do not reward those who make losing bets on their own convictions. *See id.* (we do not permit people "to wait until victory is lost before complaining").

█ Wells also failed to timely assert his claim that the court permitted Marlys Larsen to provide improper character evidence. Wells first objected to the admission of character evidence in his motion in arrest of judgment. No objection was made at trial when Larsen testified to specific instances of horse mistreatment engaged in by Wells. Likewise, Wells failed to properly object to Larsen's testimony regarding Wells' reputation in the community. Instead, Wells' objection to that line of questioning was that "there's been no foundation as to any sort of expertise beyond having been around horses." To preserve error on this issue, Wells should have objected that insufficient foundation had been laid to establish Larsen's ability to testify to Wells' reputation. Thus, error was not preserved on either issue concerning character evidence.

## VIII. Conclusion.

We conclude the district court erred in failing to dismiss one of the counts in the trial information. We otherwise affirm the district court. We remand the case to the district court for entry of judgment on a single count and for resentencing.

**AFFIRMED IN PART, REVERSED IN PART, SENTENCE VACATED, AND REMANDED FOR RESENTENCING.**