# IN THE COURT OF APPEALS OF IOWA

No. 15-0339
Filed August 17, 2016

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**LISA MARIE VILETA,**
　　　　Defendant-Appellant.

_____

　　　　Appeal from the Iowa District Court for Tama County, Mitchell E. Turner, Judge.

　　　　Lisa Marie Vileta appeals her convictions of two counts of perjury. **AFFIRMED.**

　　　　Chad R. Frese of Kaplan & Frese, LLP, Marshalltown, for appellant.

　　　　Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney General, for appellee.

　　　　Considered by Vogel, P.J., and Doyle and Bower, JJ.

**DOYLE, Judge.**

Lisa Marie Vileta appeals her convictions of two class "D" felony counts of perjury, in violation of Iowa Code section 720.2 (2013). She argues there is insufficient evidence to support her convictions because the evidence does not support a finding she knew the material statements she made were false at the time she made them. Viewing the evidence in the light most favorable to the State, substantial evidence supports a finding Vileta made statements she knew to be false. Accordingly, we affirm her perjury convictions.

**I. Background Facts and Proceedings.**

Vileta's perjury convictions stem from statements she made about Bruce Rhoads in December 2012. From the evidence presented at trial, a reasonable jury could have found the following facts.

Vileta and Rhoads, a deputy sheriff in the Tama County Sheriff's Department, became involved in a romantic relationship that began in the spring of 2011. They first met through an online dating website, and Vileta moved into Rhoads's home about two weeks later. By Easter of 2012, the relationship had soured and become rocky, and it ended in November 2012.

After the relationship ended, Vileta—who had the password to Rhoads's email account—began monitoring Rhoads's email, checking his messages every day or every other day. She discovered that on December 5, 2012, Rhoads had sent an email to the Gmail account "watchdawg44." Vileta previously told Rhoads several times that she believed that account belonged to Jim Schico, a man she had been involved in a romantic relationship with while living in Texas some years earlier. Vileta had further told Rhoads that Schico had stalked and

harassed her and that she was afraid of him. The December 5th email stated: "Lisa Vileta now working at Thiessens in Marshalltown Iowa goes by Lisa Marie on [F]acebook lives in Tama or Marshalltown."

On December 6, 2012, seeking to press criminal charges against Rhoads, Vileta met with Tama County Sheriff Dennis Kucera to inform him that she feared for her safety in the aftermath of her break up with Rhoads. She retrieved and printed out the email while at the sheriff's office. The sheriff provided Vileta with a voluntary statement form to fill out, which she took home and returned the next day. Also on December 6, 2012, at 12:02 p.m., Vileta filed a verified petition for relief from domestic abuse, stating Rhoads had threatened her and she feared for her physical safety. In the portion of the petition where she described any injuries or threats she received from Rhoads, Vileta stated:

> Bruce Rhoads contacted a stalker, Jim Schico and knowingly gave Jim Schico information where I worked and the town I lived in. Bruce Rhoads knows that Jim Schico wants to cause me harm and has stalked me for a minimum of 2 years. Please find the email attached. Bruce's actions will cause harm to me, he gets very angry with me if I don't do as he says. I fear he will hurt me once he finds out my actions by my statement and pending charges of endangerment.

A copy of the email was attached to the petition. Based on the information contained in the petition, the district court issued a temporary protective order at 1:40 p.m., prohibiting Rhoads from contacting Vileta. The record before us is not clear as to when Rhoads was served with the order.

On December 7, 2012, Vileta provided Sheriff Kucera with a notarized four-and-a-half-page hand-written statement in which she described her relationship with Rhoads, portraying him as angry and demanding, describing

how Rhoads had kicked her out of his home on multiple occasions, and claiming Rhoads threatened to "use his position" as a deputy sheriff in a way that she "would regret" if she "talk[ed] back to him." Vileta stated she feared Rhoads in part because he had described to her how he had threatened his daughter's ex-boyfriend, vandalized his vehicle, and plotted to kill him. She also detailed her history with Schico, stated Rhoads knew Schico had stalked her and that she feared him, and alleged Rhoads had contacted Schico to inform him of her whereabouts, knowing Schico would "harass [her] at work and/or physically hurt [her] given the opportunity." Vileta concluded her statement by claiming Rhoads "is capable of killing and hurting someone when he feels threatened," alleging Rhoads had "abused his position as a Tama County Deputy Sheriff to intimidate [her]" and requesting criminal charges be filed against Rhoads. A copy of the email was attached to the statement.

On December 7, 2012, after he had been served with the protective order, Rhoads again emailed watchdawg4.[1] Rhoads testified he wrote the email seeking help because "at this point paperwork had been filed on [him] that could make [him] lose [his] entire career and job." In the email, Rhoads identified himself as an ex-boyfriend who Vileta was "currently trying to cause problems for," much like she had done to "a fellow she talks about from Texas." Rhoads wrote, "I'm going to assume you are him or know him." He requested help in finding a transcript from a forum "in which [Vileta] spent days trashing on a guy

---

[1] Because Rhoads received a delivery failure message to his December 5th email, he believed he may have mistyped the address, so he forwarded the email to "watchdawg4" at 8:28 p.m. on December 6, 2012. He did not receive a delivery failure message this time, but he did not receive any response to this email.

named Jim Schico, a former boyfriend of hers," which Rhoads intended to introduce as evidence in the hearing on Vileta's petition for protection from domestic violence. The following day, December 8, Rhoads again emailed watchdawg4, stating: "If you got my previous email do not answer to that address as Lisa has hacked into it. Respond to this new address or call [me]. I need to speak with Jim Schico before my hearing with Lisa on Dec 20th." Rhoads received his first response from the watchdawg4 account later that day, asking, "What is it that you want to know about Lisa Vileta[?]" Unbeknownst to him, the watchdawg4 account belonged to Vileta. In an exchange of emails over the course of the next few days, Vileta—as watchdawg4—purported to be Schico.

On December 11, 2012, Vileta sent an email from the watchdawg4 account that hinted at a murder-for-hire plot:

> I called into [Vileta's place of work] today. They gave me her work schedule. I have resources to make this go away once and for all. She works late every Friday night until 9. I have a private contractor that will help aid in getting rid of Ms. Vileta. This Friday he will come in as a customer, a good looking man, in his 50's[,] wandering throughout the store close to closing time. [Beforehand], Ms. Vileta[']s car will have been tampered with, little silver car, needing help, he will be in the parking lot ready to assist her. After that, Ms. Vileta will no longer be a problem for you or I.

Rhoads reported the message to the Iowa Division of Criminal Investigation (DCI), which eventually determined Vileta to be the owner of the watchdawg4 account.

At trial, Rhoads testified he never verbally threatened Vileta, physically assaulted her, or touched her in an unwanted fashion. He described an incident in which Vileta, who was intoxicated, attempted to provoke him into a physical confrontation, but he testified that he took action to prevent the situation from

escalating. Rhoads then summarized a conversation he had with Vileta the next day, in which he explained to her the seriousness of the situation:

> I made it very clear to her that the very worst thing that can possibly happen to a law enforcement officer is any allegations of domestic assault. I made it very clear to her that once an officer has the allegation, they lose their gun typically, which means they lose their job.

Rhoads also denied ever telling Vileta that he would use his position to make her regret talking back to him or that he would use his position as a deputy sheriff to do her any harm. Rhoads further testified Vileta's claim that he had contacted Schico was false because at the time she made that statement, he had never spoken to Schico and the email he sent to watchdawg44 was undeliverable. Rhoads testified that, despite what Vileta had told him, he never believed the person he was emailing to be Schico; he thought the account "possibly [belonged to] a private investigator."

Vileta admitted at trial that Rhoads never physically abused her. However, she testified that when she filled out the petition for relief from domestic abuse, she believed that Rhoads had threatened her and she feared for her physical safety because Rhoads had contacted Schico knowing that she feared Schico and that Schico "would cause [her] harm." Vileta also feared Rhoads would hurt her once he learned about the statement she gave Sheriff Kucera and the "pending charges of endangerment" based on what Rhoads had told her about his treatment of his daughter's ex-boyfriend.

The jury was instructed that in order to find Vileta guilty of Count I of perjury, the State had to have proved:

1. On or about the 6th day of December 2012, the Defendant was under oath or affirmation.

2. The oath or affirmation was made in an Iowa Code Chapter 236 Relief from Domestic Abuse Petition filed in Tama County District Court.

3. The Defendant made a statement(s) of material fact.

4. The statement(s) was false when it was made.

5. Defendant knew the statement(s) was false.

In order to find Vileta guilty of Count II of perjury, the jury was instructed that the State was required to prove:

1. On or between December 6 and December 7, 2012, the Defendant was under oath or affirmation.

2. The oath or affirmation was made in a Tama County Sheriff's Voluntary Statement Form.

3. The Defendant made a statement(s) of material fact.

4. The statement(s) was false when it was made.

5. Defendant knew the statement(s) was false.

The jury found Vileta guilty of both counts of perjury as charged.

Vileta appeals. She argues there is insufficient evidence to support her convictions because the evidence does not support a finding she knew the material statements she made—that Rhoads had contacted Schico—were false at the time she made them.

## II. Scope and Standard of Review.

We review challenges to the sufficiency of the evidence for correction of errors at law. *See State v. Howse*, 875 N.W.2d 684, 688 (Iowa 2016). In reviewing a sufficiency-of-the-evidence claim, we view the record in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from it. *See id.* We uphold the verdict if it is supported by substantial evidence. *See id.* "Evidence is substantial when 'a rational trier of fact could conceivably find the defendant guilty beyond a reasonable doubt.'" *Id.* (citation

omitted). Evidence is not substantial if it raises only "suspicion, speculation, or conjecture." *Id.* (citation omitted).

### III. Sufficiency of the Evidence.

Vileta does not dispute that she made false, material statements, but she instead challenges the sufficiency of the evidence showing she knew the statements she made were false. Specifically, she argues that at the time she made the petition for relief from domestic abuse and the written statement to the sheriff, she believed Rhoads had made contact with Schico.

There is evidence to support a finding that Vileta knew Rhoads had not contacted Schico when she made her statements. There is also evidence that Vileta believed Rhoads had contacted Schico when she made her statements.

The evidence concerning the pivotal December 5th email from Rhoads to watchdawg44 is both confusing and conflicting. Rhoads testified he did not recall what time of day he sent the email. He said it "bounced back." A copy of the delivery failure message is not in the record before us. Rhoads did not recall sending the email twice. He claimed he did not think watchdawg44 was Schico but was possibly a private investigator. Because the email bounced back, Rhoads believed he may have mistyped the address, so he later forwarded the email to "watchdawg4" at 8:28 p.m. on December 6, 2012. He did not receive a delivery failure message this time, but he did not receive any response to this email.

On the other hand, Vileta said Rhoads knew watchdawg44 was Schico. In monitoring Rhoads's emails on December 5, 2012, Vileta saw a message of delivery failure to watchdawg44. She then went to Rhoads's "sent messages"

folder and discovered two identical emails sent to watchdawg44 on December 5, 2012—one sent at 4:29 p.m. and the other at 10:29 p.m. She said the delivery failure notice was for the 10:29 p.m. email and that she never saw a delivery failure notice for the 4:29 p.m. email. She downloaded the emails and sent them to another email account of hers. She then deleted the emails from Rhoads's account. It was the 10:29 p.m. email Vileta retrieved and printed out while at the sheriff's office the morning of December 6, 2012. It was this email she attached to the petition for relief from domestic abuse filed on December 6th and to her written statement provided to the sheriff on the 7th. Investigative records indicate Vileta emailed the watchdawg44 account sometime on December 6th and received a delivery failure message stating the account she tried to reach did not exist.

The question of whether there is substantial evidence to support Vileta's perjury convictions is therefore one of credibility, which is the province of the jury. *See State v. Blair*, 347 N.W.2d 416, 420 (Iowa 1984) (stating the "very function of the jury is to sort out the evidence presented and place credibility where it belongs"); *see also State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006) ("It is not the province of the court . . . to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury."). The jury was free to reject Vileta's claims she did not know her statements were false at the time they were made and to credit Rhoads's claim he did not believe watchdawg44 was Schico. *See State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993) ("The jury is free to believe or disbelieve any testimony as it chooses and to give weight to the evidence as in

its judgment such evidence should receive."). We defer to the jury's credibility determinations. *See State v. Wells*, 629 N.W.2d 346, 356 (Iowa 2001).

A finding that Vileta was the less credible witness is supported by other evidence in the record: Vileta's adult children testified they never saw Rhoads mistreat her, Vileta impersonated another party in her emails with Rhoads and fabricated a murder-for-hire plot, and Vileta threatened Rhoads's daughter. The evidence also indicates that Vileta was angry with Rhoads following their break up, and Rhoads had told Vileta how damaging a domestic abuse charge would be to his career. Viewing the evidence in the light most favorable to the State, a reasonable jury could find Vileta knew her statements asserting Rhoads had contacted Schico were false at the time she made them. Furthermore, a reasonable jury could find Vileta's statements asserting Rhoads had threatened her were false.

Substantial evidence supports Vileta's convictions. Accordingly, we affirm.

**AFFIRMED.**