WIGGINS, Justice
(dissenting).
When a statute’s language is plain and unambiguous, we look no further than the statute. Zimmer v. Vander Waal, 780 N.W.2d 730, 733 (Iowa 2010). Here, we have an unambiguous statute, thus it is unnecessary for us to resort to the rules of statutory construction. Yet, the majority ignores this principle, and forges ahead with its own construction of Iowa Code section 562.1A(2) (2015).
In doing so, the majority opinion disregards the primary tenets of statutory construction. In interpreting a statute, we must determine legislative intent. Auen v. Alcoholic Beverages Div., 679 N.W.2d 586, 590 (Iowa 2004). We determine legislative intent from the words chosen by the general assembly, not by what the general assembly should or might have said. State v. Dohlman, 725 N.W.2d 428, 431 (Iowa 2006).
The majority adds a primary purpose test to Iowa Code section 562.1A(2), when the general assembly did not include a primary purpose test in the statute. The majority also suggests the phrase “an animal” contained in the definition of livestock in Iowa Code section 717.1 means more than one animal for purposes of section 562.1A(2). By reaching these conclusions, the majority is manipulating the plain language chosen by the general assembly to reach what it feels is a just result,
I understand that the general assembly may not have wanted to apply section 562.1A(2) to a fact situation such as .the one in this case, but it is the general assembly’s task to write the law to express that policy, not the court’s. By rewriting the plain language of the statute, the majority is imposing its policy on the people of this state. Therefore, I agree with the court of appeals that the plain language of section 562.1A(2) does not include any limiting language to exclude a leasehold where only one horse grazes. Thus, the Porters must comply with the farm-tenancy-notice requirements under sections 562.5 and 562.7.
At one time, the Hardens grazed cattle and had up to eight horses on the property. They claim they pared down their agricultural use because of this dispute. The primary purpose test as written in to the statute by the majority will cause needless litigation, leaving courts to guess whether to apply it at the time the party’s executed the lease or at the time of its termination.
Furthermore, the record is devoid of any evidence that the Hardens were not using “the land” primarily for agricultural purposes with just one horse, yet the majority still finds section 562.1A(2) does not apply. The majority leaves open the possibility that one horse may be enough to create a farm tenancy, but gives no guidance on how a court should apply this test. It is anyone’s guess as to what kind of horse would establish a farm tenancy, perhaps only a special horse—a champion stallion—as the majority suggests. In this case, the district court must make this factual finding, not the majority. See Hutchison v. Shull, 878 N.W.2d 221, 237 (Iowa 2016) (requiring a remand for the district court to find facts when this court interprets a statute differently than the district court applied it).
In addition, under the majority’s primary purpose test, it is unclear whether section 562.1A(2) includes hobby farmers or people who grow crops and raise livestock for charitable causes. Additionally, how does the primary purpose test apply *430 to the family who works in the city, but live in the country to own horses or grow crops for their personal use. Furthermore, if you earn your principal income off the farm by working in town, do you meet the majority’s primary purpose test?
The majority attempts to use our zoning law’s primary purpose test to make its rewritten statutory scheme work. It does not. Zoning laws generally do not mix residential and commercial uses in the same property. Thus for zoning purposes it is easy to determine the primary use. Under this statute, it is not that easy.
Again, what about the couple who moves their family to rural Iowa to raise their children with Iowa’s rural farm values. On the farm, the family cultivates crops and grazes animals. However, the family’s farm operation does not provide enough income to support the family, so both parents work outside the farm to supplement their incomes. The plain language of the statute protects this family. Who knows if the majority’s rewritten statutory scheme would protect the same family?
Finally, the majority weakens our criminal laws regarding injury to livestock found in chapter 717 of the Code. It is clear the legislative intent in sections 717.1A and 717.2 was to criminalize livestock abuse and neglect for abuse or neglect of one or two animals. See State v. Wells, 629 N.W.2d 346, 354, 357 (Iowa 2001) (upholding defendant’s conviction on a single count of livestock neglect for the death of two of his horses). By manipulating the word “an” in section 717.1(4), a person could now argue he or she is not guilty of livestock abuse unless it is more than one or two horses or a special kind of horse. The general assembly clearly did not contemplate this result.
In summary, I would apply the statute as written and not go through the mental gymnastics used by the majority to reach this result. The majority decision creates more uncertainty than it resolves. For these reasons, I dissent.