# IN THE COURT OF APPEALS OF IOWA

No. 22-2082
Filed May 22, 2024

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**WILLIAM VERNALE STEPHENSON,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Dubuque County, Monica Zrinyi Ackley, Judge.


        A defendant appeals his convictions for sexual abuse in the second degree and continuous sexual abuse of a child. **AFFIRMED.**


        Martha J. Lucey, State Appellate Defender, and Rachel C. Regenold, Assistant Appellate Defender, for appellant.

        Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.


        Considered by Bower, C.J., Buller, J., and Gamble, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

2

**GAMBLE, Senior Judge.**

William Stephenson appeals his convictions for sexual abuse in the second degree and continuous sexual abuse of a child. Finding substantial evidence supports the verdicts and the district court did not abuse its discretion in denying Stephenson's motions for mistrial, we affirm.

**I. Background Facts & Proceedings**

In March 2021, Stephenson was charged with two counts of sexual abuse in the second degree, in violation of Iowa Code section 709.3(1)(b) (2021), and two counts of continuous sexual abuse of a child, in violation of section 709.23(1). The charges stemmed from allegations of Stephenson abusing his daughter M., then eight years old, and D., the nine-year-old niece and adopted daughter of his long-time paramour Catherine. The matter proceeded to trial in October 2022, where a jury found Stephenson guilty of all four offenses. The jury was presented with the following evidence.

On February 5, 2021, Catherine entered the bedroom she shared with Stephenson and found him lying under the covers with D. Catherine pulled back the covers and saw D.'s underwear had been pulled down around her knees, and Stephenson's penis was out. Catherine screamed at Stephenson and chased him out of the house. Catherine spoke with the children, called Stephenson to find out what was going on, contacted the police, and brought the children to the hospital.

D. testified that on February 5 she'd had a headache, and Stephenson gave her a pill and said she could sleep on his and Catherine's bed. She lay on her side, Stephenson lay down behind her, pulled down her underwear, and pulled down his pants. D. felt him touch her "butt" and "private part," and she was

"[u]ncomfortable, bad, [and] confused." She testified Stephenson had "put his privacy part in [her] butt" during the bedroom incident. Catherine came in and got mad.

D. stated Stephenson had his private parts out "around one or two" other times. D. described a time when "it was cold out" and she was watching a Christmas movie, Stephenson "was trying to touch and get his penis and with me" and "put his private part on [her] private part." As D. had joined the family in January 2020, this Christmas incident would have occurred in late 2020. She also recalled an incident when she was in online school because of COVID in spring 2020, Stephenson had her shut off her camera for the Zoom meeting, stood behind her and touched her "front private part." D. said there may have been other incidents, but she couldn't remember the details. She then described a time when she'd been eating Wendy's and watching a video in her room, then fell asleep and woke up to feeling fingernails touching her all over, but she also thought it was a dream. D. testified, "Um, all I know is that I felt long fingernails scratching me just everywhere." That incident likely occurred in fall 2020, as the weather was similar to the October 2022 date she was testifying.

M. also testified. Partway through her testimony, M. got very upset and moved to a separate room to appear via television screen. M. said Stephenson had touched her "private part" "a bunch of times," starting when she was seven years old and in first grade (in spring 2020). The last time was around when the "thing with [D.] happened" and Stephenson moved out (February 2021). She said she had seen Stephenson's private part three times and touched it more than three times. M. indicated at least two incidents happened on her parents' bed: one when

Stephenson would "touch [her] private part with his hands," and another where he "touch[ed] [her] butt with his private part." In another incident when she was eight years old (i.e. early 2021), he was touching her private part while they were on the couch. M. stopped verbally answering questions for a time, but she nodded "yes" that the bed and couch were different times. She said Stephenson did not touch "[her] private part with his private part." M. testified Stephenson told her if she told anybody about what was going on, "he was going to be killing me. . . . and . . . my mommy."

A doctor from the Child Protection Center performed sexual assault examinations for D. and M. in February 2021. Both examinations came back normal—no bruising, bleeding, tears, injuries, or evidence of healed injuries. The doctor explained "the majority of the time [in child sexual abuse exams] they're normal" so the result was not unexpected and not grounds to rule out sexual abuse. A defense expert testified there was no physical evidence of intercourse for either child. Screening of D.'s clothing and a sexual assault kit did not reveal any seminal fluid, and other items tested were inconclusive or negative for evidence of sexual assault.

The jury returned verdicts finding Stephenson guilty of committing sexual abuse in the second degree against both D. and M. between January 1, 2020, and June 30, 2020. The jury also found him guilty of committing continuous sexual abuse—that is, three acts each of sexual abuse against D. and M. between July 1, 2020, and February 5, 2021.[1] After the verdict, Stephenson filed motions

---

[1] The offense of continuous sexual abuse was a new criminal offense in effect beginning July 1, 2020.

in arrest of judgment and for a new trial, asserting the State failed to prove all four offenses beyond a reasonable doubt, M.'s emotional reaction while testifying and the mother's comments prevented him from receiving a fair and impartial trial. The court found the State met its burden of proof and that substantial evidence supported the verdicts.

## II. Standard of Review

> Sufficiency of the evidence claims are reviewed for corrections of errors at law. In making determinations regarding the sufficiency of the evidence, we "view the evidence in the light most favorable to the state, regardless of whether it is contradicted, and every reasonable inference that may be deduced therefrom must be considered to supplement that evidence." . . . . "Evidence is substantial if it would convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." Evidence can be either circumstantial or direct, or both.

*State v. Lilly*, 930 N.W.2d 293, 298 (Iowa 2019) (internal citations omitted).

We review a "challenge to the district court's denial of a mistrial for an abuse of discretion." *State v. Brown*, 996 N.W.2d 691, 696 (Iowa 2023). "The defendant is only entitled to a new trial if the prejudice resulting from the denial prevented the defendant from having a fair trial." *Id.*

## III. Analysis

On appeal, Stephenson asserts there is insufficient evidence to support his convictions for continuous sexual abuse of D. and M. and that the district court abused its discretion by denying his motion for a mistrial.

**A. Sufficiency of the Evidence.** Stephenson challenges the evidence supporting his convictions for continuous sexual abuse, asserting the State failed to prove three or more acts against each child spanning more than thirty days. Stephenson also asserts M. confused abuse by another family member and

attributed it to him, that because there is no physical evidence the State did not prove its case for second-degree sexual abuse as to M. The State asserts sufficient evidence supports each verdict, particularly when viewed in the light most favorable to the State.

"[I]t is the jury's function to determine the credibility of a witness." *Brown*, 996 N.W.2d at 696. "[W]e defer to the fact finder's determinations concerning witness credibility" and "are bound by the jury's verdict unless it is not supported by substantial evidence." *State v. Wells*, 629 N.W.2d 346, 356 (Iowa 2001). We recognize that even with child victims, "[a] sexual abuse victim's testimony alone may be sufficient evidence for conviction." *State v. Donahue*, 957 N.W.2d 1, 10-11 (Iowa 2021).

*1. Continuous sexual abuse of D.* To prove the offense of continuous sexual abuse, the jury "must unanimously agree that three or more acts of sexual abuse were committed with the same child and at least thirty days have elapsed between the first and last acts of sexual abuse. The jury does not need to unanimously agree which specific acts were committed or the exact date when those acts were committed." Iowa Code § 709.23(3). "[A]ny single physical contact described in section 702.17[2] is a sex act sufficient to complete a sexual abuse crime when

---

[2] Iowa Code section 702.17 defines "sex act" or "sexual activity" as
> any sexual contact between two or more persons by any of the following:
> 1. Penetration of the penis into the vagina or anus.
> 2. Contact between the mouth and genitalia or mouth and anus or by contact between the genitalia of one person and the genitalia or anus of another person.
> 3. Contact between the finger, hand, or other body part of one person and the genitalia or anus of another person, except in the

other proscribed circumstances exist." *State v. Constable*, 505 N.W.2d 473, 477-78 (Iowa 1993) (finding "five distinct acts of physical contact," within two series of actions, supported five counts of sexual abuse); *cf. State v. Copenhaver*, 844 N.W.2d 442, 449 (Iowa 2014) (examining when multiple acts can constitute separate and distinct criminal offenses).

> [T]he three or more separate acts must be shown with reasonable specificity to enable a jury to be satisfied beyond a reasonable doubt of a time and place where each act occurred. However, this rule does not mean that evidence of the precise time and place of each incident or act is required, but merely means the three or more acts must be separated by time and place so that each incident is separate and distinct.

*State v. Yeo*, 659 N.W.2d 544, 550 (Iowa 2003). Not requiring a precise time and place is "compatible with the very nature of child abuse, and the inherent difficulty of establishing precise times and places of abuse to children due to the frequent delay in the discovery of the abuse, as well as other factors based on the nature of the crime." *Id.*; *accord State v. Wilde*, 987 N.W.2d 486, 494 (Iowa Ct. App. 2022).

In her testimony, D. identified four distinct times when incidents occurred: spring 2020 when she attended school via Zoom, fall 2020 (based on her weather description of not hot or cold out, but "sometime in the middle"), Christmas 2020, and February 5, 2021. While the first incident was before the statutory effective

---

course of examination or treatment by a person licensed pursuant to chapter 148, 148C, 151, or 152.
    4. Ejaculation onto the person of another.
    5. By use of artificial sexual organs or substitutes therefor in contact with the genitalia or anus.
    6. The touching of a person's own genitals or anus with a finger, hand, or artificial sexual organ or other similar device at the direction of another person.

date for continuous sexual abuse, the first and last acts are separated by at least thirty days, and she described more than one sex act as defined by section 702.17 occurring during each of the Christmas 2020 and February 5 occurrences.

Stephenson argues the evidence was insufficient to support his conviction of continuous sexual abuse of D. because there was no physical evidence of sexual abuse. Her February 5, 2021 physical exam did not reveal any acute injuries. There was no DNA evidence. There was no medical evidence of penetration. But, "[a] sexual abuse victim's testimony alone may be sufficient evidence for conviction," and the jury was entitled to believe the testimony of the victims. *See Donahue*, 957 N.W.2d at 10–11; *State v. Trane*, 984 N.W.2d 429, 437 (Iowa 2023); *accord* Iowa R. Crim. P. 2.21(3) ("Corroboration of the testimony of victims shall not be required."). And, in this case, Catherine caught Stephenson in bed with her niece with his penis out.

We conclude substantial evidence supports Stephenson's conviction for the continuous sexual abuse of D.

*2. Sexual abuse of M.* Stephenson challenges both convictions relating to the sexual abuse of M. Stephenson asserts, "M.'s testimony was particularly weak on details" and lacking any ties to a time period. He also asserts M. "could have confused the incidents" with another family member's abuse.

M.'s testimony had less specifics than D.'s. But M. was seven and eight years old at the time of the abuse, and the trial was occurring more than a year and a half after the last alleged incident with D. We recognize "[s]ome liberality must be permitted . . . because of the age of the [accuser]." *State v. Rankin*, 181 N.W.2d 169, 172 (Iowa 1970). "Inconsistencies and lack of detail are common in

sexual abuse cases and do not compel a jury to conclude that the victim is not credible or that there is insufficient evidence to support a guilty verdict." *Donahue*, 957 N.W.2d at 10–11; *see also State v. Wanninger*, No. 22-1845, 2023 WL 8449411, at *2 (Iowa Ct. App. Dec. 6, 2023).

When asked if Stephenson touched her private parts "one time, or two times, or three times, or a bunch of times," M. said it happened "a bunch of times." And when asked "More than three?" she answered "Yes." She also testified to seeing his private part "three times" and him touching her with it "a bunch". She placed the first time while she was in first grade, which would have been the first half of 2020. M. also testified to him touching her private part while they were sitting on the couch and thought she was eight at the time, placing the incident in early 2021. She also described a time where she was lying in the bed and he touched her private part, and a separate time in the bedroom where he showed her his private part and touched her bottom with it. M. said she was seven and eight years old when it happened, and the last time was around when Stephenson did the same thing to D.

The jury was able to listen to M., consider her consistency throughout her testimony, and determine the credibility of her accusations. Although not precise, there was sufficient information in M.'s testimony to determine a time span of the abuse and specific acts that occurred. The jury found the testimony to be specific and precise enough to prove beyond a reasonable doubt the elements of second-degree sexual abuse and continuous sexual abuse of a child. Under the circumstances, we agree and affirm both convictions.

**B. Mistrial.** Stephenson's second claim is that the district court abused its discretion by denying his motion for mistrial. "Misconduct on the part of a spectator constitutes grounds for a mistrial if the misconduct is of such character as to prejudice the defendant or influence the verdict." *State v. Hackett*, 197 N.W.2d 569, 572 (Iowa 1972); *accord State v. Allen*, No. 98-2012, 2000 WL 767686, at *3 (Iowa Ct. App. June 14, 2000). "It is left to the sound discretion of the trial court to determine whether the misconduct was prejudicial since it had the opportunity to see and hear everything that transpired." *Allen*, 2000 WL 767686, at *3.

Partway through M.'s testimony, the child was moved to a separate room with attorneys from both sides and the witness coordinator, with the video feed streamed to the courtroom where the judge, jury, Stephenson, and spectators remained. While M. was testifying from the other room, Catherine made comments from the courtroom gallery.[3] Later that day, when the jury was out of the courtroom but the spectators were still present, Stephenson's counsel asserted the jury heard Catherine's comments and could have been influenced by the statements, and moved for a mistrial. The State responded the comments did nothing to help its case and the jurors would not have looked favorably on the behavior. The court remarked it had heard the first of the comments, "didn't get the full gist" of the second comment, and did not hear the third, and doubted most of the jury could hear any more clearly. The court denied the motion, ruling, "I don't think that

---

[3] According to Stephenson's counsel, the comments included: "I don't know what this has to do with anything"; "Why is she allowed to question or ask this question"; and in response to a comment by counsel about not trying to trick M., Catherine said, "Well, basically you are."

11

anything that she said rises to the level to justify mis-trying the case. I will offer to the jury more specification in the instruction that tells them that the only evidence they are to consider is what came from the witness stand."

Counsel renewed the motion for mistrial at the close of the State's evidence. The court again found the comments did not "rise[ ] to the level of extreme prejudice that would violate [Stephenson]'s constitutional rights. I believe that we can correct that with a jury instruction." Stephenson's counsel asked the court to "please let the gallery know that they are not to be talking or talking to the jury or talking out loud in general?" The court responded, "I again hope that the State has provided that information, as they are officers of the Court and should have instructed anyone to do that, but just so everybody understands, anybody in the courtroom cannot talk to any of the jurors and cannot make any comment during testimony." The jury was not in the room at the time of this colloquy, but there is no indication in the record the spectators in the gallery were not present during this admonishment.

The court modified the standard cautionary instruction to the jury regarding the court's comments or actions not affecting their verdict to add:

> Comments, objections, opening and closing statements of counsel are not evidence and should not be considered by you as evidence. Comments by any person in the gallery, and not under oath, are not evidence and should not be considered by you as evidence.

Stephenson argues that the court's response was inadequate and he was prejudiced by the mother's "commenting on the defense questioning of one of the children . . . suggest[ing] defense counsel was trying to trick the child and that she was asking questions she shouldn't be allowed to ask."

The jury was admonished before opening statements to "decide the facts solely from the evidence produced here in open court."  The court explained evidence consisted of testimony from the stand, exhibits offered and accepted by the court, and reading into the record or showing video of depositions.  And the jury instructions—in addition to the cautionary instruction modification—clearly delineated what constituted evidence for the jury to base their verdict on.  The court noted it had not heard the only comment Stephenson argues was prejudicial— about trying to trick the child—and did not think the jury heard it, either.  The jury could see it was the children's mother commenting and had seen her testify against Stephenson earlier in the trial.  We presume juries follow the instructions on what evidence to consider when rendering their verdict.  *See State v. Sanford*, 814 N.W.2d 611, 620 (Iowa 2012) (affirming denial of mistrial after witnesses violated order in limine excluding evidence of victim's death because the court "instructed the jury that it was not to consider the fact that the victim died" and "[j]urors are presumed to follow instructions").  Stephenson has failed to prove the court's ruling was so prejudicial as to deprive him of a fair trial.  *See Brown,* 996 N.W.2d at 696.

We find the district court did not abuse its discretion in denying Stephenson's motions for mistrial.

**AFFIRMED.**